CARLSMITH BALL LLP

DAVID LEDGER
ELYZE McDONALD
134 West Soledad Avenue
Bank of Hawaii Bldg., Suite 401
P.O. Box BF
Hagåtña, Guam 96932-5027
Tel. No. (671) 472-6813

Attorneys for Plaintiff
Jan's Helicopter Service, Inc.



FILED
DISTRICT COURT OF GUAM

FEB 0 4 2003

MARY L. M. MORAN
CLERK OF COURT

## IN THE DISTRICT COURT OF GUAM

| | | |
|---|---|---|
| JAN'S HELICOPTER SERVICE, INC., | ) | CIVIL CASE NO. CV **03-00002** |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | **COMPLAINT** |
| | ) | |
| FEDERAL AVIATION | ) | |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff alleges the following:

1.     The Court has original and exclusive jurisdiction of this action pursuant to

28 U.S.C. § 1331, there being federal and constitutional law questions for this Court to resolve.

2.     Jan's Helicopter Service, Inc. ("Jan's") is a corporation organized and

existing according to law.

3.     The Federal Aviation Administration is an agency of the United States

government, that pursuant to the Federal Aviation Act of 1958, as amended, regulates aircraft.

///

4. Venue is proper pursuant to 28 USC §1391(b)(2), as a substantial part of the events on which the claims in this Complaint are based occurred in the Territory of Guam.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

5. Jan's is the legal and registered owner of a deHavilland Caribou DCH-4A ("the Caribou"), call sign RPC 2702.

6. Jan's has operated the Caribou under 14 C.F.R. Part 375 – Navigation of Foreign Civil Aircraft within the United States - and specifically § 375.30 – Operations Other than Commercial Air Operations – since March 7, 2000, when the United States Department of Transportation advised that no additional DOT operating authority would be required. See Exhibit A. Such authority was conditional upon, among other things, unity of ownership between the Caribou and any cargo carried, and that once delivered, the cargo would not be used in the furtherance of Jan's business. Jan's met these conditions.

7. On one occasion, Jan's used the Caribou to transport a helicopter, also owned by Jan's, to another location in Micronesia.

8. Once delivered, the transported helicopter was not used in "the furtherance of Jan's business," under 14 C.F.R. 375.1 (definition of commercial air operations).

9. Mr. Lewis I. Ziegler is an agent of the Federal Aviation Administration.

10. On July 31, 2002 Mr. Lewis I. Ziegler, without authority, legal cause, other justification or prior notice, acted outside the scope of his employment and authority and issued notice to the Guam Airport authorities which states that Jan's Caribou was not "authorized to operate [on Guam]." This notice had the force and effect of a grounding order and, in fact, caused the Guam Airport authorities to ground the Caribou and deny the aircraft and its crew access to the taxiway and runway for a perfectly legal non-cargo flight. See Exhibit B.

11.    Accordingly, the July 31st directive from Mr. Ziegler had the equivalent effect of an order issued pursuant to 14 C.F.R. 13.20, and also arbitrarily and capriciously misinformed Guam International Airport authorities that the Caribou was not "authorized to operate [on Guam]." See Exhibit B.

12.    Furthermore, Mr. Ziegler did not provide Jan's "with notice prior to issuance" of his July 31st order, even though such notice is mandatory under 14 C.F.R. 13.20(b).

13.    Not only did Mr. Ziegler fail to give the mandatory prior notice of his unauthorized July 31st order grounding the Caribou, Mr. Ziegler kept his order secret even after he issued it. As a result, it was not until August 9, 2002, as the Caribou was preparing to taxi for a simple maintenance flight, that the Guam Airport authorities denied the Caribou ramp access.

14.    Understandably baffled, Jans asked the Guam Airport authorities- "why?" The response was that the FAA had revoked the Caribou's operating authority and, as proof, faxed Exh. B - Mr. Ziegler's July 31st email - to Jan's.

15.    The response of the Guam Airport authority as described above is compelling and sufficient proof that Mr. Ziegler's July 31st order is in substance and effect no different from a "formal" order issued pursuant to 14 C.F.R. 13.20, which on August 9, 2002 unlawfully prevented the Caribou from flying under Part 375.30.

16.    However, Mr. Ziegler neglected to provide Jan's "with notice prior to issuance" of his order, even though such notice is mandatory under 14 C.F.R. 13.20(b).

17.    Mr. Ziegler's unauthorized order had the effect of a legal grounding order issued under 14 C.F.R. 13.20. That is to say, the FAA and the Guam Airport Authority refused to recognize Jan's Part 375.30 operating authority and Jan's was unable to fly the Caribou.

///

18. As a result of the events described above, especially the Caribou being grounded without prior notice or any opportunity to be heard or otherwise respond, on August 13, 2002, pursuant to 14 C.F.R. 13.35, Jan's requested a hearing. See Exhibit C.

19. On August 23, 2002, the Federal Aviation Administration issued a preliminary finding upholding Mr. Ziegler's conclusions.

20. On August 28, 2002, Jan's requested a hearing under 14 C.F.R. 13.35 and a partial rescission of the grounding order.

21. On September 19, 2002, the Office of the Regional Counsel denied Jan's request for a hearing on quintessential "catch 22" grounds: since Mr. Ziegler had no authority to issue the §13.20 denial of operating authority order, it is " not really an order" under 14 C.F.R. 13.20, and therefor Jan's is not entitled to the hearing provided for by 14 C.F.R. 13.35. (See Exh. D). In other words, the FAA sanctioned Mr. Ziegler's role as unauthorized cop, judge and jury and enforcer, and yet denied Jans any right to be heard or to seek a remedy.

22. On September 23, 2002, Jan's filed a formal complaint with the Federal Aviation Administration under 14 C.F.R. § 13.5 seeking an investigation pursuant to 14 C.F.R. Subpart A, a letter of correction pursuant to Part 13.11(b)(2) to immediately rescind the unauthorized July 31, 2002 cease and desist order, assessment of civil penalties pursuant to Parts 13.15 and 13.16, actual and consequential damages according to proof, and attorneys fees and costs.

23. On December 5, 2002, Jan's received the FAA's response to the Complaint. Not surprisingly, the FAA stated that Mr. Ziegler acted within the scope of his employment, and that the process set forth in section 13.5 did not apply, again leaving Jans without any meaningful opportunity to be heard or to seek a remedy.

## COUNT I: GROUNDING ORDER CONSTITUTES A VIOLATION
## UNDER 14 C.F.R. 13.5

24.     Paragraphs 1 through 23 are incorporated herein by reference.

25.     Mr. Ziegler's July 31st grounding order had the equivalent force and effect of, and is otherwise the same in substance, as an authorized grounding order issued pursuant to 14 C.F.R 13.20.

26.     Only the Chief Counsel, the Deputy Chief Counsel, and each Assistant Chief Counsel (including Regional and Center Counsels) are authorized to issue orders such as the one Mr. Ziegler issued. See FAA Order 2150.3A, para. 1209(b); see also Exhibit D, ¶2.

27.     Part 13.5 and formal complaints issued thereunder apply to employees of the FAA who have acted outside the scope of their employment and authority. See Part 13.5(a).

28.     Since Mr. Ziegler admittedly had no authority to issue his July 31st grounding order to Guam Airport authorities, his actions were personal and outside the scope of his employment and authority and, accordingly, subject to a formal complaint under 14 C.F.R. 13.5.

## COUNT II: GROUNDING ORDER VIOLATES 14 C.F.R. 13.20(b)

29.     Paragraphs 1 through 28 are incorporated herein by reference.

30.     The purpose of 14 C.F.R. 13.20(b) is to provide the person subject to an order pursuant to Part 13.20 **prior notice and an opportunity to respond**. In other words, due process of law. Section 13.20(b) states:

> Unless the *Administrator* determines that an emergency exists and safety in air commerce requires the immediate issuance of an order under this section, the person subject to the order *shall be provided with notice prior to issuance.*

///

31.    Here, the Administrator neither determined that an emergency existed nor that safety in air commerce required the immediate issuance of Mr. Ziegler's order denying operating authority.

32.    Mr. Ziegler did not provide Jan's with the mandatory notice prior to issuing his order on July 31, 2002. What's more, Mr. Ziegler did not even give notice afterwards, but instead kept his order secret. Jan's had no knowledge of the order until after, at substantial expense, it had readied the Caribou and its crew for flight and requested ground clearance.

33.    Mr. Ziegler's personal acts and omissions constitute a violation of 14 C.F.R. 13.20(b) and a violation within the meaning of 14.C.F.R. 13.1.

34.    Mr. Ziegler's unauthorized grounding order dated July 31, 2002 constitutes a violation of 14.C.F.R.13.20(b) and a violation withing the meaning of 14 C.F.R. 13.1.

## COUNT III: GROUNDING ORDER VIOLATES DUE PROCESS UNDER 14 C.F.R. 13.20 (b)

35.    Paragraphs 1 through 34 are incorporated herein by reference.

36.    Mr. Ziegler's unauthorized grounding order dated July 31, 2002 constitutes a violation of the due process requirement imposed by 14 C.F.R. 13.20(b) and therefore, an illegal taking of Jan's property.

## COUNT IV: VIOLATION OF DUE PROCESS UNDER AMENDMENT V

37.    Paragraphs 1 through 22 are incorporated herein by reference.

38.    Mr. Ziegler's unauthorized grounding order constitutes a violation of the due process requirements under Amendment V to the United States Constitution, by failing to

follow the Federal Regulations prescribed for issuing cease and desist orders under 14 C.F.R.

13.20(b), and by unlawfully taking Jan's property.

WHEREFORE Plaintiff requests the following relief:

1. Judgment in favor of Jan's and against the Federal Aviation

Administration, ordering the rescission of the unauthorized July 31, 2002 grounding order and

full restoration of Part 375.30 operating authority.

2. Assessment of civil penalties pursuant to Parts 13.15 and 13.16 according

to proof.

3. Actual and consequential damages according to proof.

4. Attorney's fees and costs.

5. Such other and further relief as the Court deems proper.

Dated this 4th day of February 2003.

CARLSMITH BALL LLP

DAVID LEDGER
ELYZE McDONALD
Attorneys for Defendant
Jan's Helicopters, Inc.

# EXHIBIT "A"

From: Wellington, George <George.Wellington@ost.dot.gov>
To: J. Walker (E-mail) <jwalker@kuentos.guam.net>
Sent: Tuesday, March 07, 2000 11:59 AM
Subject: Part 375/USDOT


> David--
> Sorry for the delay in responding, but we've now worked your
> questions through our legal people, and here are the answers:
>
> Scenario #1: With the company owning, operating, and crewing the
> Caribou itself, the operation would be authorized by regulation under
> section 375.30, and no additional DOT operating authority would be
required.
>
> Scenario #2: With a subsidiary involved, and thus direct or indirect
> compensation, the operation would require either a foreign aircraft permit
> under section 375.42, or an exemption under 49 U.S.C. 40109.  Operations
> authorized by permit under Part 375 are strictly limited to six flights
per
> calendar year, and any operations in excess of that number could be done
> only if the operator received exemption authority under 40109 (FYI, 40109
is
> common carrier authority, of the type held, for example, by British
Airways
> or Air Canada). In either case, we could not act on the request until the
> Federal Aviation Administration had reviewed the operator and given us
> written clearance, and that could prove to be a time-consuming process,
> given the distances involved.  So, from a timing/ease of operation point
of
> view, scenario #1 would present far fewer problems.
>
> Whether operating under Scenario #1 or #2, the operator would need
> to comply with applicable FAA requirements, including those in 14 CFR Part
> 91.
>
> I hope this helps. If you have any further questions, let me know.
> George

**EXHIBIT A**

# EXHIBIT "B"

# Message

dansn@guam

| Folders |
|---|
| Create Message |
| Preferences |
| Address Book |
| Log out |

Move to: Sent

ATT. MIKE

**To:** gerardb@guamcell.net, dansn@guamcell.net

**From:** Lewis.I.Zeigler@faa.gov

**Date:** 31 Jul 2002, 04:09:11 AM

**Subject:** _____

Mr. Bautista and Mr. San Nicolas;

What can you tell me about a Philippine registered Caribou (DHC-4) that i:
supposed to be based on Guam and flying around the islands? Supposedly it
used to be a U.S. registered aircraft and is hauling some small helicopte.
that are used on fishing boats. Whoever it is they aren't authorized to
operate there.

Best regards,

Lew Zeigler

Move to: Sent

**EXHIBIT B**

# EXHIBIT "C"



# CARLSMITH BALL LLP

A LIMITED LIABILITY LAW PARTNERSHIP

BANK OF HAWAII BLDG., SUITE 401
134 WEST SOLEDAD AVENUE, P.O. BOX BF
HAGÅTÑA, GUAM 96932-5027
TELEPHONE (671) 472-6813   FAX (671) 477-4375
WWW.CARLSMITH.COM

August 13, 2002

**VIA FACSIMILE [(310) 725-6816]**
**and CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Federal Aviation Administration
Western Pacific Region
Office of the Regional Counsel
P.O. Box 92007
Worldway Postal Center
Los Angeles, California 90009-2007

Re:   Jans Helicopter Service, Inc; July 31, 2002 denial of operating authority at
      Guam International Airport; Request For Hearing Under 14 CFR § 13.35

Dear Regional Counsel:

1.   Introduction and background

We are legal counsel for Jan's Helicopter Service, Inc. Jan's is the legal and
registered owner of a Guam-based deHavilland Caribou DCH-4A, call sign RPC2702. Jan's
uses the Caribou to transport helicopters, also owned by Jan's, to various location in Micronesia.
The helicopters are under contract to tuna boat owners who use them to find schools of tuna.
The Caribou operation is authorized by regulation under Part 375 -- Navigation of Foreign Civil
Aircraft Within the United States, specifically 14 CFR §375.30 -- Operations other than
commercial air operations. On March 7, 2000, the U.S. Department of Transportation advised us
that no additional DOT operating authority would be required, so long as there was unity of
ownership between the Caribou and the helicopter being transported. Jan's only transports
helicopters owned by Jan's.

HONOLULU · KAPOLEI · HILO · KONA · MAUI · GUAM · SAIPAN · LOS ANGELES · WASHINGTON, D.C. · MEXICO

**EXHIBIT** C

On July 31, 2002, without the required prior notice, legal cause or justification, Lewis I. Ziegler of the FAA arbitrarily and capriciously issued a notice to Guam ATC that Jan's was not authorized to operate the Caribou (Exh. A). Not only did Mr. Ziegler fail to give prior notice of the so-called revocation of authority as required by 14 CFR 13.20(b), Jan's remained completely unaware of the "revocation" until August 9, 2002, when Guam ATC denied ramp access to the Caribou based on Mr. Ziegler's July 31st directive.

But there is much more at stake than a single instance of denied ramp access. Unfortunately, at the time Guam ATC denied ramp access, Jan's was preparing to transport a badly needed helicopter, likewise owned by Jan's, to a waiting customer. As a result, Mr. Ziegler's offhand and illegal revocation of operating authority resulted in an unfulfilled contract and substantial loss of income to Jan's, the precise amount of which has yet to be determined, but could exceed US$1,080,000. Jan's will look to the FAA to recover its losses and damages. Pursuant to 14 CFR § 13.20(c), Jan's hereby contests the FAA's July 31, 2002 revocation of operating authority and requests a hearing on the matter.

### 2  DOT operating authority was confirmed on March 7, 2000

In early 2000, Jan's corresponded with the DOT regarding operating authority for the Caribou. After exchanging a number of emails, DOT confirmed that its legal department had worked through the issues and determined that operation was authorized by regulation under Part 375 -- Navigation of Foreign Civil Aircraft Within the United States, specifically 14 CFR §375.30 -- Operations other than commercial air operations (Exh. B). Furthermore, DOT advised that no additional DOT operating authority would be required, so long as there was unity of ownership between the Caribou and the helicopter being transported (Exh. B). As noted above, Jan's only transports helicopters owned by Jan's.

### 3.  Mr. Ziegler's July 31st 2002 illegal revocation of operating authority must be rescinded.

The revocation of authority, Exh. A., warrants close scrutiny and must be rescinded for a number of reasons.

#### a. It is arbitrary and capricious.

Exh. A is self-contradictory and arbitrary and capricious. First, Mr. Ziegler admits he knows little, if anything, about the Caribou. He writes, "What can you tell me about a Philippine registered Caribou .... that used to be U.S. registered? Second, he admits he knows little, if anything, about Jan's. He writes "Whoever it is, they aren't authorized .... Nonetheless, armed with little or no information, Mr. Ziegler revokes operating authority -- "....

they aren't authorized to operate [on Guam]." Third, though purporting to revoke operating authority, Exh. A. cites no authority whatsoever.

b.    It violates 14 CFR § 13.20(b).

The purpose of §13.20(b) is to provide the person subject to an order under §13.20[1] prior notice and an opportunity to respond, that is to say, *due process of law*. Specifically, 13.20(b) states:

(b)    Unless the *Administrator* determines that an emergency exists and safety in air commerce requires the immediate issuance of an order under this section, the person subject to the order *shall be* provided with notice prior to issuance.

Section 13.20(b) makes prior notice non-discretionary - prior notice *shall be* provided . What's more, a finding of an emergency in air commerce which warrants a cease and desist order without prior notice is a right reserved to the *Administrator*, not Mr. Ziegler. Here, even though the Administrator did not declare an emergency in air commerce, no prior notice of the order revoking operational authority order was given to Jan's. What's more, until Guam ATC bushwhacked Jan's on August 9, 2002 when the pilot had the Caribou ready to taxi, Jan's had no notice at all of the "order." At that moment, Jan's pilot came up with an expression to aptly describe what had happened, though it is unsuitable for print here. In the circumstances, Jan's was denied due process of law, the July 31st revocation arbitrarily and capriciously violates the law and therefore must be rescinded, and Jan's is entitled to recover it losses and damages from the FAA.

4.    Conclusion & relief requested.

The appalling results of August 9, 2002 at the Guam International Airport ramp, without more, demonstrate the purpose underlying the mandatory prior notice provision of 14 CFR §13.20(b). The simple fact is that had Mr. Ziegler followed the law, or taken a moment to enquire about the authority DOT had confirmed for the Caribou on March 7, 2000, more likely than not none of this would have occurred. Unfortunately, Mr. Ziegler disregarded due process and instead chose to arbitrarily and capriciously revoke operating authority and dismiss the consequences. Jan's requests the following relief:

---

[1]Even though the July 31, 2002 letter cites neither authority nor other legal justification, it has the effect of a cease and desist and denial order issued under authority of 14 CFR § 13.20 - Orders of compliance, cease and desist orders, orders of denial, and other orders.

1.  Immediate recission of the illegal July 31st 2002 revocation of authority.

2.  Written prior notice of any question regarding its authority under 14 CFR § 375.30.

3.  Damages for loss of contract revenues and consequential damages caused as a result of the Caribou being illegally denied ramp access on August 9, 2002.

4.  A hearing on the earliest possible date.

Respectfully submitted,

David Ledger
Attorney for Jan's Helicopter Service, Inc.

DPL:jmc
3144170.1.051998-00011

# EXHIBIT "D"



U.S. Department
of Transportation
**Federal Aviation
Administration**

**SEP 1 9 2002**

David P. Ledger, Esq.
CARLSMITH BALL LLP
134 West Soledad Avenue, Suite
  401
P.O. Box BF
Hagatna, Guam 96932-5027

Dear Mr. Ledger:

Re:   Requests For Hearings

This is a final response to your requests that the Federal
Aviation Administration (FAA) convene hearings to resolve
the matters raised in your electronic mail (e-mail) to
Lewis Ziegler on August 9, 2002, regarding the operations
of the Philippine registered Caribou owned by your client,
Jans Helicopter Service and your letters to me dated
August 13, 2002, regarding the Caribou and raising another
matter, the letter issued by the Honolulu Flight Standards
District Office to another of your clients, Americopters
LLC, directing them to cease operating from the heliport
located on the roof of Chuck's Steakhouse in Upper Tumon,
Guam.

In support of your requests for hearings in these matters,
you cite to Federal Aviation Regulation (FAR) 13.20(b).
This FAR is part of Subpart C of Part 13.  Subpart C
applies to legal enforcement actions, and FAR 13.20 sets
forth the procedures for requesting a hearing where the
FAA has issued orders of compliance, cease and desist
orders, orders of denial, and other orders.  Only the
following individuals have authority to issue such orders,
the Chief Counsel, the Deputy Chief Counsel, and each
Assistant Chief Counsel (including Regional and Center
Counsels).  See FAA Order 2150.3A, para. 1209(b).  No such
orders were issued with respect to the operations of the
Caribou by Jans Helicopter Service or with respect to
Americopters flights using the Chuck's Steakhouse
heliport.

**EXHIBIT D**

Neither Mr. Ziegler's e-mail to the Guam International
Airport Authority nor Mr. Kanae's letter to Mr. Rufus
Crowe constitutes an order as that term is contemplated by
the Part 13, Subpart C. Therefore your requests are
denied.

If you consider filing a formal complaint under FAR 13.5,
you should be aware that that section does not apply to
complaints against the Administrator or complaints against
FAA employees acting within the scope of their employment.
FAR 13.5(a).

Sincerely,

Monroe P. Balton
Regional Counsel