# ORIGINAL ●                                           ●



CARLSMITH BALL LLP

DAVID LEDGER
ELYZE McDONALD
134 West Soledad Avenue
Bank of Hawaii Bldg., Suite 401
P.O. Box BF
Hagåtña, Guam 96932-5027
Tel. No. (671) 472-6813

Attorneys for Plaintiff
Jan's Helicopter Service, Inc.

## IN THE DISTRICT COURT OF GUAM

| | | |
|---|---|---|
| JAN'S HELICOPTER SERVICE, INC., | ) | CIVIL CASE NO. 03-00002 |
| | ) | |
| Plaintiff, | ) | |
| | ) | **PLAINTIFF JAN'S HELICOPTER** |
| vs. | ) | **SERVICE, INC.'S OPPOSITION TO** |
| | ) | **DEFENDANT FEDERAL AVIATION** |
| FEDERAL AVIATION | ) | **ADMINISTRATION'S MOTION TO** |
| ADMINISTRATION, | ) | **DISMISS FOR LACK OF JURISDICTION;** |
| | ) | **EXHIBITS A - G; DECLARATION OF** |
| Defendant. | ) | **SERVICE** |
| | ) | |

## I.    Introduction.

Defendant Federal Aviation Administration's Motion to Dismiss this case on the basis

of lack of jurisdiction represents yet another instance in which it has sought to avoid submitting the

issues of this case for proper review. Since the FAA initially issued a grounding order without

authorization back on July 31, 2002, Plaintiff Jan's Helicopters, Inc. has continually sought review

of that order, only to be declined such review on the basis that the July 31, 2002 order was "not really

an order," and thus was not entitled to agency review.

3154209.2.051998-00036

Now, at this stage in the proceedings, the FAA misapplies a federal jurisdiction statute, 49 U.S.C. § 46110, seeking to preclude the district court from reviewing this case, on the basis that only the Ninth Circuit has jurisdiction to review FAA orders (despite the FAA's contention all along that the order issued was not an "order"). In this Opposition, Jan's asks that the Court carefully scrutinize the FAA's "non"-orders, and find that it maintains jurisdiction over the complaint filed in this action on the basis that no final agency decision has been issued, no administrative record has been sustained, and that valid due process claims have been made, and deny the FAA's motion to dismiss on those grounds.

## II. Factual and Procedural Background.

On July 31, 2002, Mr. Lewis I. Zeigler, an agent of the FAA, wrote to Guam International Airport authorities stating that Jan's Caribou aircraft (a Viet Nam war era transport category twin engine airplane) was not "authorized to operate" on Guam. See Ex. A. Zeigler's written notice to the Guam Airport authorities was effectively a grounding order, evident by the simple fact that the Airport authorities grounded the aircraft and denied it and its crew access to the airport taxiway and runway for legal non-cargo flights. In response to the grounding without prior notice, on August 13, 2002, pursuant to 14 C.F.R. 13.35, Jan's wrote to the Federal Aviation Administration Office of Regional Counsel, arguing that the July 31, 2002 order violated due process of law, and requesting a hearing on the unauthorized grounding order. See Ex. B. In response, on August 23, 2002, FAA Regional Counsel issued a "preliminary finding" upholding Mr. Ziegler's conclusions. See Ex. C. On August 28, 2002, Jan's replied to FAA Regional Counsel, once again requesting a hearing under 14 C.F.R. § 13.35 and a partial rescission of the grounding order. See Ex. D.

On September 19, 2002, the Office of the Regional Counsel denied Jan's request for a hearing on quintessential "catch 22" grounds: since Mr. Ziegler had no authority to issue the §13.20 denial of operating authority order, it was "not really an order" under 14 C.F.R. 13.20, and therefore Jan's was not entitled to the hearing provided for by 14 C.F.R. 13.35. See Ex. E.

On September 23, 2002, Jan's filed a formal complaint with the Federal Aviation Administration under 14 C.F.R. § 13.5 seeking an investigation pursuant to 14 C.F.R. Subpart A, a letter of correction pursuant to Part 13.11(b)(2) to immediately rescind the unauthorized July 31, 2002 cease and desist order, assessment of civil penalties pursuant to Parts 13.15 and 13.16, actual and consequential damages according to proof, and attorneys fees and costs. See Ex. F.

On December 5, 2002, Jan's received the FAA's November 22, 2002 response to the Complaint, in which the FAA stated that Mr. Ziegler acted within the scope of his employment, and that the process set forth in section 13.5 did not apply to the present situation. The FAA also stated that it was "forwarding [Jan's] letter to the Director of FAA's Flight Standards Service for appropriate handling." See Ex. G. Nothing happened after that.

As a result and in continuing efforts to seek restoration of its legal rights, on February 4, 2003, Jan's filed its Complaint with the District Court of Guam alleging four counts. First, that Mr. Zeigler violated 14 C.F.R. 3.5 by issuing an unauthorized grounding order. Second, that the grounding order violated 14 C.F.R. 13.20(b) as the order was issued without prior notice and an opportunity to respond. Third, that the grounding order violated due process under 14 C.F.R. 13.20(b). Last, that the grounding order violated the due process clause of the Fifth Amendment by failing to follow procedures governing cease and desist in the Code of Federal Regulations. Jan's requested an order rescinding the unauthorized July 31, 2002 grounding order and full restoration

3154209.2.051998-00036

of Part 375.30 operating authority, civil penalties, actual and consequential damages, and attorneys fees.

On May 30, 2003, Defendant FAA filed a Motion to Dismiss on the basis that only the Ninth Circuit Court of Appeals has jurisdiction over final agency decisions and actions. Defendant claims that the lack of jurisdiction permits dismissal under Federal Rule of Civil Procedure 12(b)(1).

**III.    Standard for Motion to Dismiss.**

Ordinarily, a motion to dismiss should be disfavored, and doubts should be resolved in favor of the pleader. Williams v. Gorton, 529 F.2d 668 (9th Cir. 1976). Moreover, when reviewing a motion attacking jurisdiction, the district court must accept well-pleaded allegations in complaint as true and draw all reasonable inferences in the plaintiff's favor. Villasenor v. Industrial Wire & Cable, Inc., 929 F. Supp. 310 (N.D. Ill. 1996).

**IV.    Jurisdiction is Proper in the District Court.**

In its Motion to Dismiss, Defendant Federal Aviation Administration purports that 49 U.S.C. § 46110, under which a court of appeals maintains exclusive jurisdiction to review final decisions and actions made by the FAA, precludes the instant action in the district court. Section 46100 states that

> a person disclosing a substantial interest in an order issued by the Secretary of Transportation (. . . or the Administrator of the Federal Aviation Administration with respect to aviation safety duties and powers designated to be carried out by the Administrator) under this part may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business.

49 U.S.C. § 46110(a).

However, not all "orders" and administrative proceedings qualify to bypass review at the district court level and instantly become prime for review by a court of appeals. Also, contrary to the FAA's assertion, the Ninth Circuit does not always have jurisdiction for all causes of action against the FAA. See Air Calif. v. United States Dept. of Transp., 654 F.2d 616, 619 (9th Cir. 1981) (Ninth Circuit is "a court of limited jurisdiction . . . empowered to hear only those cases which fall within the scope of a statutory grant of jurisdiction."). Instead, as discussed below, first, the agency order must be final; second, there must exist a reviewable administrative record; and third, courts of appeals deny to review claims that involve broad challenges to the constitutionality of agency actions. As the agency order and action complained of fulfills none of these criteria, the Ninth Circuit does not have jurisdiction pursuant to section 46110.

A. **The FAA Never Issued a Final Order.**

First, the Ninth Circuit's jurisdiction to review FAA orders extends only to *final* agency orders. See Air Calif., 654 F.2d at 620. A "final" order provides a definitive statement of the agency's position, has a "direct and immediate" effect on the day-to-day business of the party asserting wrongdoing, and envisions "immediate compliance with its terms." Mace v. Skinner, 34 F.3d 854, 857 (9th Cir. 1994). "By contrast, agency action lacking finality is more in the nature of a 'threshold determination that further inquiry is warranted.'" Southern Cal. Aerial Advertisers' Ass'n v. FAA, 881 F.2d 672, 676 (9th Cir. 1989).

As the procedural history of this case demonstrates, the order at issue was not a final order. Throughout Jan's attempts to follow the administrative procedures for this case, the FAA has, at every stage, denied Jan's full administrative review of the July 31, 2002 grounding order on the

Case 1:03-cv-00002    Document 9    Filed 07/18/2003    Page 5 of 47

following grounds: first, that the July 31, 2003 Ziegler Order was justified, second, that it was not really an "Order," and third, because it did not constitute such an order, Jan's could not obtain administrative review of a "non"-order. The FAA's positions are exhibited by the following instances. In the August 23, 2002 FAA letter, for example, the FAA issued a "preliminary finding" that "Jan's Helicopters is not authorized to conduct its present operations out of Guam International Airport with the foreign registered Caribou." See Ex. C at 3. In the September 19, 2002 letter the FAA issued a "final response" to Jan's request for hearings, denying the request on the basis that because Mr. Zeigler was not a person authorized to issue cease and desist orders, **no such order was issued**, and Jan's therefore cannot seek review of such an order under Part 13, Subpart C. The FAA's November 22, 2002 letter restated the conclusions that the July 31, 2002 grounding order was not the type of order contemplated by 14 C.F.R. 13.20, and that Mr. Zeigler was acting within the scope of his employment. Therefore, under the FAA's view, Jan's administrative complaint on September 23, 2002, was not even considered a complaint, and the FAA "*forward[ed]* [Jan's] letter to the Director of the FAA's Flight Standards Service for appropriate handling." Ex. G at 3 (emphasis added).

Under the FAA's reasoning, if there was never an administrative order to review, then there has been no formal final "order" issued by the FAA determining the merits of Jan's claims. However, if there has been no final order, then logically the Ninth Circuit does not have jurisdiction over this case, as its jurisdiction extends only to *final* agency actions and orders. The FAA cannot deny administrative review over a non-order, and yet here argue that the order is good enough to be reviewed directly by the Ninth Circuit. In other words, the FAA cannot have it both ways.

Moreover, none of the orders or letters issued by the FAA convey that it is a "final order," and that no further inquiry be warranted. None provide a definitive statement of the FAA's position nor can be qualified as documents with the status of law. This is best illustrated by the fact that the last correspondence received by Jan's stated that it would be forwarded to the Director of the FAA's Flight Standards Service. See Ex. G.

Furthermore, contrasted with other cases, it is evident that none of the FAA's orders or letters come anywhere close to what courts consider "final orders," that merit immediate review by a court of appeals, as opposed to a district court. In Board of Supervisors of Fairfax County, for example, the court found the Secretary of Transportation issued a final decision because the Secretary's decision was based upon an environmental impact statement prepared by the FAA Administrator, and a public hearing was held with written submissions of interested persons made part of the public record. 410 F. Supp. 1052, 1054 (D.D.C. 1976). Here, however, the "orders" issued in this particular case did not endure any similar rigor of due process. The July 7, 2002 grounding order was issued without notice. As discussed above, all subsequent orders deny Jan's the opportunity to present its side at an administrative hearing, on the basis that the July 7, 2002 grounding order is not really an order. In sum, the FAA has used procedural tactics to evade Jan's to which the instant Motion to Dismiss is no exception.

The FAA has never issued a final order with respect to this case. Therefore the District Court retains jurisdiction.

**B.      There Exists No Administrative Record upon which the Ninth Circuit can Review.**

Second, because "judicial review must be limited to a context where it may be

informed," there must exist a reviewable administrative record. <u>City of Alexandria v. Helms</u>, 728

F.2d 643, 646 (4th Cir. 1984); <u>Southern Cal. Aerial Advertisers Ass'n</u>, 881 F.2d at 676. The record

in this case lacks an adequate basis upon which the Ninth Circuit can evaluate Jan's claims. Indeed,

there is no administrative record to review in the first place. The entire record consists of the July

31, 2002 grounding order, and the subsequent correspondence between Jan's and the FAA. There

exists no investigative data, no conclusive findings made by the FAA, no hearing transcript or

recordings of testimony. <u>Compare Board of Supervisors of Fairfax City</u>, 410 F. Supp. at 1055

(complete administrative record based on a final decision, hearing transcript and written decision of

Secretary of Transportation, and parties' representatives' presentations at a hearing before the

Secretary). In this case, in no sense would the Ninth Circuit be informed of the cause of the July 31,

2002 order or the constitutional effect of the order upon Jan's, as there is simply no administrative

record from which it can examine.

> **C.** **This Case Deals with Due Process Claims, over which the District Court has Jurisdiction.**

Lastly, courts consider whether the case "broadly challenges the constitutionality of

the FAA's action - in which case the district court could have jurisdiction," or, in other words, is the

case "'inescapably intertwined with a review of the procedures and merits surrounding the FAA's

order?'" 728 F.2d at 646. For example, in <u>Mace v. Skinner</u>, 34 F.3d at 856, the plaintiff brought a

complaint in the district court challenging the FAA's use of an emergency order to revoke the

plaintiff's mechanics certificate, as well as the constitutionality of the ensuing administrative

proceedings. The Ninth Circuit held that the district court erred in dismissing the plaintiff's claims

on the basis of lack of jurisdiction, as such claims constituted broad constitutional challenges,

Case 1:03-cv-00002    Document 9    Filed 07/18/2003    Page 8 of 47

jurisdiction over which belongs at the district court level. Id. at 859. "[A]ny examination of the constitutionality of the FAA's revocation power should logically take place in the district courts, as such an examination is neither peculiarly within the agency's 'special expertise' nor an integral part of its 'institutional competence.'" Id.

Since the grounding order was first issued in this case, Jan's has continuously argued that the order was unauthorized and illegal, being issued without mandatory notice requirements under the Code of Federal Regulations and the United States Constitution. See Exs. B, D, F; Compl. filed Feb. 4, 2003. As in Mace, Jan's Complaint could "not [have been] based on the merits of any particular . . . order," because the FAA never addressed the merits of the order. Id. at 858. Rather, it asserts broad constitutional challenges to the authority of the FAA's agent to issue the order (Count I), the lack of notice and an opportunity to respond to such order (Count II), and violations of due process (Counts III & IV). As the FAA never addressed the merits of these issues, and because the Complaint challenges the constitutionality of the order, jurisdiction is proper in the district court.

V.     **Conclusion.**

As no final order in this case has been issued and no administrative record has been developed, and valid due process claims have been asserted, section 46110 does not apply, and the District Court retains jurisdiction over this case. The Court should deny the FAA's Motion to Dismiss.

Dated this 18th day of July 2003.

CARLSMITH BALL LLP

DAVID LEDGER
ELYZE McDONALD
Attorneys for Plaintiff
Jan's Helicopter Service, Inc.

3154209.2.051998-00036                    9.



# Message

dansn@guamce

Move to: Sent    ATT. MIKE

Message 21 of 28 (New



**To:** gerardb@guamcell.net, dansn@guamcell.net

**From:** Lewis.I.Zeigler@faa.gov

**Date:** 31 Jul 2002, 04:09:11 AM

**Subject:**

Mr. Bautista and Mr. San Nicolas;

What can you tell me about a Philippine registered Caribou (DHC-4) that is supposed to be based on Guam and flying around the islands? Supposedly it used to be a U.S. registered aircraft and is hauling some small helicopter that are used on fishing boats. Whoever it is they aren't authorized to operate there.

Best regards,

Lew Zeigler

Message 21 of 28 (New

Move to: Sent

Case 1:03-cv-00002  Document 9  Filed 07/18/2003  Page 10 of 47  **EXHIBIT A**



# CARLSMITH BALL LLP

A LIMITED LIABILITY LAW PARTNERSHIP

BANK OF HAWAII BLDG., SUITE 401

134 WEST SOLEDAD AVENUE, P.O. BOX BF

HAGÁTÑA, GUAM 96932-5027

TELEPHONE (671) 472-6813   FAX (671) 477-4375

WWW.CARLSMITH.COM

August 13, 2002

**VIA FACSIMILE [(310) 725-6816]**
**and CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Federal Aviation Administration
Western Pacific Region
Office of the Regional Counsel
P.O. Box 92007
Worldway Postal Center
Los Angeles, California 90009-2007

Re:   Jans Helicopter Service, Inc; July 31, 2002 denial of operating authority at
      Guam International Airport; Request For Hearing Under 14 CFR § 13.35

Dear Regional Counsel:

1.     Introduction and background

        We are legal counsel for Jan's Helicopter Service, Inc.  Jan's is the legal and
registered owner of a Guam-based deHavilland Caribou DCH-4A, call sign RPC2702.  Jan's
uses the Caribou to transport helicopters, also owned by Jan's, to various location in Micronesia.
The helicopters are under contract to tuna boat owners who use them to find schools of tuna.
The Caribou operation is authorized by regulation under Part 375 -- Navigation of Foreign Civil
Aircraft Within the United States, specifically 14 CFR §375.30 -- Operations other than
commercial air operations.  On March 7, 2000, the U.S. Department of Transportation advised us
that no additional DOT operating authority would be required, so long as there was unity of
ownership between the Caribou and the helicopter being transported.  Jan's only transports
helicopters owned by Jan's.

HONOLULU  ·  KAPOLEI  ·  HILO  ·  KONA  ·  MAUI  ·  GUAM  ·  SAIPAN  ·  LOS ANGELES  ·  WASHINGTON, D.C.  ·  MEXICO

**EXHIBIT B**

On July 31, 2002, without the required prior notice, legal cause or justification, Lewis I. Ziegler of the FAA arbitrarily and capriciously issued a notice to Guam ATC that Jan's was not authorized to operate the Caribou (Exh. A). Not only did Mr. Ziegler fail to give prior notice of the so-called revocation of authority as required by 14 CFR 13.20(b), Jan's remained completely unaware of the "revocation" until August 9, 2002, when Guam ATC denied ramp access to the Caribou based on Mr. Ziegler's July 31st directive.

But there is much more at stake than a single instance of denied ramp access. Unfortunately, at the time Guam ATC denied ramp access, Jan's was preparing to transport a badly needed helicopter, likewise owned by Jan's, to a waiting customer. As a result, Mr. Ziegler's offhand and illegal revocation of operating authority resulted in an unfulfilled contract and substantial loss of income to Jan's, the precise amount of which has yet to be determined, but could exceed US$1,080,000. Jan's will look to the FAA to recover its losses and damages. Pursuant to 14 CFR § 13.20(c), Jan's hereby contests the FAA's July 31, 2002 revocation of operating authority and requests a hearing on the matter.

2    <u>DOT operating authority was confirmed on March 7, 2000</u>

In early 2000, Jan's corresponded with the DOT regarding operating authority for the Caribou. After exchanging a number of emails, DOT confirmed that its legal department had worked through the issues and determined that operation was authorized by regulation under Part 375 -- Navigation of Foreign Civil Aircraft Within the United States, specifically 14 CFR §375.30 -- Operations other than commercial air operations (Exh. B). Furthermore, DOT advised that no additional DOT operating authority would be required, so long as there was unity of ownership between the Caribou and the helicopter being transported (Exh. B). As noted above, Jan's only transports helicopters owned by Jan's.

3.    <u>Mr. Ziegler's July 31st 2002 illegal revocation of operating authority must be rescinded.</u>

The revocation of authority, Exh. A., warrants close scrutiny and must be rescinded for a number of reasons.

a.  <u>It is arbitrary and capricious</u>.

Exh. A is self-contradictory and arbitrary and capricious. First, Mr. Ziegler admits he knows little, if anything, about the Caribou. He writes, "What can you tell me about a Philippine registered Caribou .... that used to be U.S. registered? Second, he admits he knows little, if anything, about Jan's. He writes "Whoever it is, they aren't authorized .... Nonetheless, armed with little or no information, Mr. Ziegler revokes operating authority -- "....

they aren't authorized to operate [on Guam]." Third, though purporting to revoke operating authority, Exh. A. cites no authority whatsoever.

### b. It violates 14 CFR § 13.20(b).

The purpose of §13.20(b) is to provide the person subject to an order under §13.20[1] prior notice and an opportunity to respond, that is to say, *due process of law*. Specifically, 13.20(b) states:

> (b) Unless the *Administrator* determines that an emergency exists and safety in air commerce requires the immediate issuance of an order under this section, the person subject to the order *shall be* provided with notice prior to issuance.

Section 13.20(b) makes prior notice non-discretionary - prior notice *shall be* provided . What's more, a finding of an emergency in air commerce which warrants a cease and desist order without prior notice is a right reserved to the *Administrator*, not Mr. Ziegler. Here, even though the Administrator did not declare an emergency in air commerce, no prior notice of the order revoking operational authority order was given to Jan's. What's more, until Guam ATC bushwhacked Jan's on August 9, 2002 when the pilot had the Caribou ready to taxi, Jan's had no notice at all of the "order." At that moment, Jan's pilot came up with an expression to aptly describe what had happened, though it is unsuitable for print here. In the circumstances, Jan's was denied due process of law, the July 31st revocation arbitrarily and capriciously violates the law and therefore must be rescinded, and Jan's is entitled to recover it losses and damages from the FAA.

### 4. Conclusion & relief requested.

The appalling results of August 9, 2002 at the Guam International Airport ramp, without more, demonstrate the purpose underlying the mandatory prior notice provision of 14 CFR §13.20(b). The simple fact is that had Mr. Ziegler followed the law, or taken a moment to enquire about the authority DOT had confirmed for the Caribou on March 7, 2000, more likely than not none of this would have occurred. Unfortunately, Mr. Ziegler disregarded due process and instead chose to arbitrarily and capriciously revoke operating authority and dismiss the consequences. Jan's requests the following relief:

---

[1] Even though the July 31, 2002 letter cites neither authority nor other legal justification, it has the effect of a cease and desist and denial order issued under authority of 14 CFR § 13.20 - Orders of compliance, cease and desist orders, orders of denial, and other orders.

1.  Immediate recission of the illegal July 31st 2002 revocation of authority.

2.  Written prior notice of any question regarding its authority under 14 CFR § 375.30.

3.  Damages for loss of contract revenues and consequential damages caused as a result of the Caribou being illegally denied ramp access on August 9, 2002.

4.  A hearing on the earliest possible date.

Respectfully submitted,

David Ledger
Attorney for Jan's Helicopter Service, Inc.

DPL:jmc
3144170.1.051998-00011



Folders

Create Message

Preferences

Address Book

Log out

Move to: Sent    [Go]



ATT. MIKE

**To:** gerardb@guamcell.net, dansn@guamcell.net

**From:** Lewis.I.Zeigler@faa.gov

**Date:** 31 Jul 2002, 04:09:11 AM

**Subject:**

Mr. Bautista and Mr. San Nicolas;

What can you tell me about a Philippine registered Caribou (DHC-4) that i:
supposed to be based on Guam and flying around the islands? Supposedly it
used to be a U.S. registered aircraft and is hauling some small helicopte:
that are used on fishing boats. Whoever it is they aren't authorized to
operate there.

Best regards,

Lew Zeigler

Move to: Sent    [Go]

EXHIBIT A

----- Original Message -----
From: Wellington, George <George.Wellington@ost.dot.gov>
To: J. Walker (E-mail) <jwalker@kuentos.guam.net>
Sent: Tuesday, March 07, 2000 11:59 AM
Subject: Part 375/USDOT


> David--
> Sorry for the delay in responding, but we've now worked your
> questions through our legal people, and here are the answers:
>
> Scenario #1: With the company owning, operating, and crewing the
> Caribou itself, the operation would be authorized by regulation under
> section 375.30, and no additional DOT operating authority would be
required.
>
> Scenario #2: With a subsidiary involved, and thus direct or indirect
> compensation, the operation would require either a foreign aircraft permit
> under section 375.42, or an exemption under 49 U.S.C. 40109.  Operations
> authorized by permit under Part 375 are strictly limited to six flights
per
> calendar year, and any operations in excess of that number could be done
> only if the operator received exemption authority under 40109 (FYI, 40109
is
> common carrier authority, of the type held, for example, by British
Airways
> or Air Canada). In either case, we could not act on the request until the
> Federal Aviation Administration had reviewed the operator and given us
> written clearance, and that could prove to be a time-consuming process,
> given the distances involved.  So, from a timing/ease of operation point
of
> view, scenario #1 would present far fewer problems.
>
> Whether operating under Scenario #1 or #2, the operator would need
> to comply with applicable FAA requirements, including those in 14 CFR Part
> 91.
>
> I hope this helps.  If you have any further questions, let me know.
> George

# EXHIBIT B

CARLSMITH BALL LLP

DAVID P. LEDGER
134 West Soledad Avenue
Bank of Hawaii Bldg., Suite 401
P.O. Box BF
Hagåtña, Guam 96932-5027
Tel. No. (671) 472-6813

Attorneys for Respondent
Jans Helicopter Service, Inc.

## CERTIFICATE OF SERVICE

I, David P. Ledger, hereby certify and state that:

1.    I am a United States citizen over the age of 18 years;

2.    I am an Attorney of the law firm of Carlsmith Ball LLP.

3.    On the 13th day of August 2002, I caused to be served, a copy of the Request

for Hearing, via regular and certified mail to the following:

Federal Aviation Administration
Western Pacific Region
Office of the Regional Counsel
Post Office Box 92007
Worldway Postal Center
Los Angeles, California 90009-2007

Hearing Docket, Room 924A
Federal Aviation Administration
800 Independence Avenue, S.W.
Washington, D.C. 20591

Federal Aviation Administration
Don M. Hamilton
Clarence Kanae
Western Pacific Region
Honolulu Flight Standards District Office
135 Nakolo Place
Honolulu, Hawaii 96819-1845

Lewis I. Ziegler
Federal Aviation Administration
Western Pacific Region
Office of the Regional Counsel
Post Office Box 92007
Worldway Postal Center
Los Angeles, California 90009-2007

DATED this _13th_ day of August 2002.

DAVID P. LEDGER

3144193.1.051998-00011



U.S. Department
of Transportation

**Federal Aviation
Administration**

AUG    2002

David P. Ledger, Esq.
CARLSMITH BALL LLP
134 West Soledad Avenue
Bank of Hawaii Building, Suite
  401
P.O. Box BF
Hagatna, Guam  96932-5027

Dear Mr. Ledger:

 Re:  Jans Helicopter Service, Inc. - Operation of RPC2702

This responds to your e-mail letter dated August 9, 2002,
addressed to Mr. Lewis Zeigler and your correspondence
dated August 13, 2002, directed to the Federal Aviation
Administration's Regional Counsel.

On or about July 30, 2002, Mr. Zeigler received a phone
call from the Guam Airport Authority informing him that a
Philippine registered Caribou (DHC-4) was using Guam
International Airport as a base of operations to haul
helicopters to other islands in the Western part of the
Pacific Ocean.  Since Mr. Zeigler's office, the San
Francisco International Field Office (SFO-IFO), has
responsibility for all foreign air carrier operations into
the U.S. from the Asia-Pacific region under FAR 129, and
since no one in his office knew anything about any such
foreign operations at Guam, he sent an inquiry to the Guam
Airport Authority.  Mr. Zeigler's e-mail asked the Guam
Airport Authority what they could tell him about the
operation, and since he suspected it to be a foreign
operation that had no approval from the Federal Aviation
Administration under FAR 129, he offered the opinion that
the Caribou operator was not authorized to operate from
Guam.  At no point did Mr. Zeigler direct the Guam Airport
Authority or anyone else to stop the operation or deny the
aircraft access to the ramp. It should also be noted that
as of the date of your e-mail message, no one from the
Guam Airport Authority had responded to Mr. Zeigler's
message of July 30.

**EXHIBIT C**

On the date he received your e-mail, Mr. Zeigler contacted the Department of Transportation (DOT) and asked if any permit had been issued to Jan's Helicopters under 14 C.F.R. Part 375. The contact at DOT researched departmental records, going back two years and called Mr. Zeigler back. According to the DOT contact, no evidence could be found of a permit issued to Jan's Helicopters. In fact, the DOT contact was unable to locate any correspondence between Jan's Helicopters and the DOT. We note from one of the enclosures with your August 13 letter that Mr. Walker, a principal of Jans Helicopters, apparently communicated with DOT by e-mail.

In your e-mail letter to Mr. Zeigler, you state that a DOT representative wrote: "With the company owning, operating and crewing the Caribou itself, the operation would be authorized by regulation under 375.30 and no additional DOT operating authority would be required." The statement appears to be confirmed by the enclosure to your August 13 letter. However, based upon the information you provided about your client's operations using the Caribou and considering the definition of "commercial air operations" found at 14 C.F.R. Section 375.1, it does not appear that the Caribou operations fall under Section 375.30. You indicate that the Caribou is used to transport helicopters to other islands in the Western part of the Pacific Ocean where the helicopters, for compensation, are used to spot fish in support of commercial fishing operations. Jan's Helicopters use of the Caribou, as described, is a commercial air operation. "Commercial air operations" is defined as –

". . . operations by foreign civil aircraft engaged in flights for the purpose of crop dusting, pest control, pipeline patrol, mapping, surveying, banner towing, skywriting, or similar agricultural and industrial operations performed in the United States, and any operations for remuneration or hire to, from or within the United States including air carriage involving the discharging or taking on of passengers or cargo at one or more points in the United States, including carriage of cargo for the operator's own account if the cargo is to be resold or otherwise used in the furtherance of a business other than the business of providing carriage by aircraft, but excluding operations pursuant to foreign air carrier permits issued under section 402 of the Act, exemptions,

and all other operations in air transportation." (Emphasis added.)

14 C.F.R. Section 375.1.

The helicopters transported in the Caribou are "cargo for the operator's (Jan's Helicopters) own account" and are being used "in the furtherance of a business other than the business of providing carriage by aircraft." Therefore, because this is a commercial air operation using a foreign registered civil aircraft, a permit is required. See, 14 C.F.R. Section 375.40.

Thus, even though it was based upon incomplete information and an incorrect assumption, it appears that Mr. Zeigler's conclusion was accurate. Jan's Helicopters is not authorized to conduct its present operations out of Guam International Airport with the foreign registered Caribou.

This is only a preliminary finding based upon the information currently available to the FAA. But attorneys from the DOT, after being apprized of the same information, reached the same conclusion.

We are aware that the Guam Airport Authority on August 13, 2002, temporarily lifted the restriction on the Caribou, allowing it to operate. However, we are providing a copy of this letter to officials at the airport. To ensure Jans Helicopters' ability to continue operations with the Caribou, you need to contact the Department of Transportation's Office of International Aviation, Foreign Carrier Licensing Division (X-45) and submit an application for the required permit. A copy of the application can be found at Appendix A to Part 375.

Questions regarding this matter may be directed to the undersigned at 310-725-7101.

Sincerely,

Monroe P. Balton
Regional Counsel

cc:
Lewis Zeigler, SFO-IFO
Gerard Bautista, Guam Airport
Authority
Pete Beckner, Manager, HNL FSDO
George Wellington, DOT X-45
Mark Bury, AGC-7



# CARLSMITH BALL LLP

A LIMITED LIABILITY LAW PARTNERSHIP

BANK OF HAWAII BLDG., SUITE 401
134 WEST SOLEDAD AVENUE, P.O. BOX BF
HAGÁTÑA, GUAM 96932-5027
TELEPHONE (671) 472-6813    FAX (671) 477-4375
WWW.CARLSMITH.COM

August 28, 2002

**VIA FACSIMILE [(310) 725-6816]**
**and CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Monroe P. Balton, Esq.
Federal Aviation Administration
Western Pacific Region
Office of the Regional Counsel
P.O. Box 92007
Worldway Postal Center
Los Angeles, California 90009-2007

Re:   Jans Helicopter Service, Inc; July 31, 2002 denial of operating authority at
      Guam International Airport; Request For Hearing Under 14 CFR § 13.35
      Operation of Caribou RPC2702

Dear Mr. Balton:

This responds to your letter dated August 23, 2002.

Regarding your opinion that Jan's Helicopter Service is operating Caribou
RPC2702 in "commercial air operations" as defined by 14 C.F.R. 375.1, we disagree and reserve
that issue for determination at the hearing we have requested. Similarly, we consider your
continued grounding order to violate the law in the same manner as Mr. Ziegler's July 31st
emailed order did and reserve that issue for the hearing. Though we understand your reasoning
and agree with it to a point, the reasoning breaks down quickly because the key fact supporting it
is actually false. The assertion on page 3 of your letter that "[t]he helicopters transported in the
Caribou are cargo for the operator's (Jan's Helicopters) own account and are being used in the
furtherance of a business other than the business or providing carriage by aircraft" is wrong.

HONOLULU · KAPOLEI · HILO · KONA · MAUI · GUAM · SAIPAN · LOS ANGELES · WASHINGTON, D.C. · MEXICO

The correct facts were considered when, on March 7, 2000, DOT legal, through Mr. George Wellington, concluded that operation of the Caribou was authorized by 14 C.F.R. 375.30 because the Caribou was not going to be involved in commercial air operations as defined by Part 375.1. However, your mistake on this key fact may, in part, understandably be the result of a misstatement in my letter dated August 13, 2002.

As I explained in that letter, on August 9, 2002 Guam Airport authorities denied the Caribou ramp access. At that time, Jan's Helicopter Service was preparing the Caribou to transport a Hughes 500, likewise owned by Jan's, to a tuna boat. But for Mr. Ziegler's unfortunate misinformation and arbitrary revocation of operating authority[1], Jan's would have been able to transport the Hughes the following day, August 10th. In other words, on August 9th the Caribou had no cargo on board and Jan's had every right to fly the Caribou. After a non-revenue transport and delivery on August 10th, Jan's would have been out of the picture and the Hughes 500 would *not* have been used in the furtherance of Jan's business.[2] Thus our statement that *Jan's* consequential losses and damages could exceed US$1,080,000 was not quite accurate.

---

[1]To be sure, we disagree with you regarding the effect of Mr. Ziegler's email of July 31, 2002 to Guam International Airport authorities, similarly leaving that issue for the hearing officer or ALJ. First off, we do not care that "no one from the Guam Airport Authority had responded to Mr. Ziegler's message of July 30." The Airport authorities' lack of any response is meaningless. What is relevant is the effect Mr. Ziegler's email had, which was the Airport authorities grounding the Caribou. That Mr. Ziegler's email had this effect is easily proved by the fact that when Jan's asked the Airport authorities to justify the grounding, they faxed a print-out of Mr. Ziegler's email and subsequently refused further comment. Where did you think we obtained that email and under what circumstances? In any case, we hereby inform you that we do not waive any argument that Mr. Ziegler's email constitutes an arbitrary and capricious order in violation of 14 C.F.R. 13.20(b) and other law, intent or lack of response notwithstanding.

[2]This is why the paragraph beginning with Scenario #1 in Mr. Wellington's March 7, 2002 email (Exh. B to my August 13, 2002 letter) states the conclusion the hearing will readily find correct. So long as the Caribou and the helicopter being carried as non-revenue cargo have common ownership, and the helicopter is not used in the furtherance of the common owner's business after discharge at destination, the operation would be authorized by Part 375.30, no additional operating authority would be required. This is why we hotly dispute the facts you report on page one of your letter, and the very reason 14 C.F.R § 13.20(b) provides that notice and an opportunity to respond shall be given prior to a non-emergency order being issued. The statements Guam Airport authorities made to Mr. Ziegler on July 30, 2002 were intentionally false, or at least grossly negligent, and caused Mr. Ziegler to send the email that grounded the Caribou. According to your letter, Guam Airport authorities told Mr. Ziegler the Caribou was using Guam as "a base of operations to haul helicopters (emphasis on the plural) to other island*s* (emphasis again on the plural) in the Western part of the Pacific Ocean." From this description, a misinformed or uniformed person who neglects to independently investigate (just a phone call to Jan's would have been sufficient) to determine the true facts might well jump to the false conclusion that Jan's had some sort of booming cargo operations hauling lots of helicopters to lots of islands all over the West Pacific. Hardly. The fact of the matter is that since the Caribou was flown to Guam a few years ago and subsequently registered in the Philippines, Jan's has used it once to haul one helicopter to one island as non-revenue cargo, and that was some nine months ago.

Instead, such a claim for damages may be made *against* Jan's, in which case Jan's options may include taking assignment of the claim or seeking indemnity from the FAA.

Aside from the foregoing issues which remain for the hearing, we request immediate and at least partial rescission of the grounding order in your letter of August 23, 2002. Specifically, Jan's requests authority to conduct limited flight operations pending outcome of the hearing. As we understand your letter, you contend the initial and subsequent grounding order are legal because the Caribou is alleged to be engaged in unauthorized "commercial air operations" as that term is defined in 14 C.F.R 375.1. Putting that issue aside until the hearing, Jan's requests authorization to operate the Caribou empty of cargo and passengers, primarily to maintain airworthiness. With the dated radial engines, it is particularly important to periodically run them up to prevent an unsafe build-up of oil and contaminates in the lower cylinders. Please confirm Jan's may operate the Caribou empty of cargo and passengers, and also inform the authorities at Guam. Pending the hearing, Jan's agrees to abide by an order authorizing this limited operation. If you refuse to authorize such limited operation, please cite authority and legal justification, and hereby be informed that your refusal will be subject of an additional claim for damages Jan's will present at the hearing.

Very truly yours,

David Ledger

DPL:jmc
3144618.1.051998-00011

## **CERTIFICATE OF SERVICE** 

I, David P. Ledger, hereby certify and state that:

1.      I am a United States citizen over the age of 18 years;

2.      I am an attorney and partner of the law firm of Carlsmith Ball LLP.

3.      On August 28, 2002, I caused to be served, a copy of the foregoing via

facsimile to 310-725-6816 (to Office of regional Counsel only), regular and certified mail.

Federal Aviation Administration           Hearing Docket, Room 924A
Western Pacific Region                    Federal Aviation Administration
Office of the Regional Counsel            800 Independence Avenue, S.W.
Mr. Monroe P. Balton                      Washington, D.C. 20591
Post Office Box 92007
Worldway Postal Center
Los Angeles, California 90009-2007

DATED this _28th_ day of August 2002.

_____
DAVID P. LEDGER



Western-Pacific Region
Office of the Regional Counsel

P. O. Box 92007
Los Angeles, CA 90009-2007

U.S. Department
of Transportation

**Federal Aviation
Administration**

**SEP 1 9 2002**

David P. Ledger, Esq.
CARLSMITH BALL LLP
134 West Soledad Avenue, Suite
  401
P.O. Box BF
Hagatna, Guam 96932-5027

Dear Mr. Ledger:

Re:   Requests For Hearings

This is a final response to your requests that the Federal
Aviation Administration (FAA) convene hearings to resolve
the matters raised in your electronic mail (e-mail) to
Lewis Ziegler on August 9, 2002, regarding the operations
of the Philippine registered Caribou owned by your client,
Jans Helicopter Service and your letters to me dated
August 13, 2002, regarding the Caribou and raising another
matter, the letter issued by the Honolulu Flight Standards
District Office to another of your clients, Americopters
LLC, directing them to cease operating from the heliport
located on the roof of Chuck's Steakhouse in Upper Tumon,
Guam.

In support of your requests for hearings in these matters,
you cite to Federal Aviation Regulation (FAR) 13.20(b).
This FAR is part of Subpart C of Part 13.   Subpart C
applies to legal enforcement actions, and FAR 13.20 sets
forth the procedures for requesting a hearing where the
FAA has issued orders of compliance, cease and desist
orders, orders of denial, and other orders.   Only the
following individuals have authority to issue such orders,
the Chief Counsel, the Deputy Chief Counsel, and each
Assistant Chief Counsel (including Regional and Center
Counsels).   See FAA Order 2150.3A, para. 1209(b).   No such
orders were issued with respect to the operations of the
Caribou by Jans Helicopter Service or with respect to
Americopters flights using the Chuck's Steakhouse
heliport.

**EXHIBIT** E

Neither Mr. Ziegler's e-mail to the Guam International
Airport Authority nor Mr. Kanae's letter to Mr. Rufus
Crowe constitutes an order as that term is contemplated by
the Part 13, Subpart C. Therefore your requests are
denied.

If you consider filing a formal complaint under FAR 13.5,
you should be aware that that section does not apply to
complaints against the Administrator or complaints against
FAA employees acting within the scope of their employment.
FAR 13.5(a).

Sincerely,

Monroe P. Balton
Regional Counsel

# CARLSMITH BALL LLP

A LIMITED LIABILITY LAW PARTNERSHIP

BANK OF HAWAII BLDG., SUITE 401

134 WEST SOLEDAD AVENUE, P.O. BOX BF

HAGÅTÑA, GUAM 96932-5027

TELEPHONE (671) 472-6813   FAX (671) 477-4375

WWW.CARLSMITH.COM

September 23, 2002

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Federal Aviation Administration
Office of the Chief Counsel
Attention: Enforcement Docket (AGC-10)  800
Independence Avenue, S.W.
Washington D.C. 20591

Re:   **COMPLAINT UNDER 14 C.F.R. 13.5 FOR AN ORDER TO RESCIND FAA'S JULY 31, 2002 ORDER GROUNDING CARIBOU PRC2702 AND REVOKING PART 375.30 OPERATING AUTHORITY**

Chief Counsel:

A.   Introduction

We are legal counsel for Jan's Helicopter Service, Inc.  Jan's is the legal and registered owner of a Guam-based deHavilland Caribou DCH-4A, call sign RPC2702.  Jan's uses the Caribou to transport helicopters, also owned by Jan's, to various location in Micronesia.  Once delivered, the helicopter is **not** used in "the furtherance of Jan's business," within the meaning of 14 C.F.R. 375.1 (definition of commercial air operations).  In the circumstances, no operating authority other than 14 C.F.R. §375.30 -- Operations other than commercial air operations -- is required

Jan's has operated under Part 375 -- Navigation of Foreign Civil Aircraft Within the United States, and specifically §375.30 -- Operations other than commercial air operations -- since March 7, 2000 when the U.S. Department of Transportation advised that no additional DOT operating authority would be required. (See Exh. A - "Scenario #1").  Such authority was conditional upon, among other things, unity of ownership between the Caribou and the helicopter

HONOLULU  ·  KAPOLEI  ·  HILO  ·  KONA  ·  MAUI  ·  GUAM  ·  SAIPAN  ·  LOS ANGELES  ·  WASHINGTON, D.C.  ·  MEXICO

**EXHIBIT F**

and that once delivered, the helicopter would not be used in the furtherance of Jan's business. Jan's has met these conditions.

Nonetheless, on July 31, 2002, the FAA, through Mr. Lewis I. Zeigler of the San Francisco International Field Office, without prior notice, issued an unauthorized order which stripped Jan's of Part 375.30 operating authority and caused the Caribou to be illegally grounded by Guam International Airport authorities. (See Exhibit B). By this complaint, Jans contests that unauthorized order on the grounds that it constitutes a violation within the meaning of 14 C.F.R. 13.1, 14 C.F.R. 13.20, and other applicable rules, regulations and law.

B.  Factual allegations common to all claims for relief.

1.  On July 31, 2002, Mr. Lewis I. Zeigler, without authority, legal cause, other justification or prior notice, acted outside the scope of his employment and issued a directive to the Guam Airport authorities which stated that the Caribou was not "authorized to operate [on Guam]" and caused the authorities to ground the Caribou. (Exh. B).

2.  The July 31st directive had the equivalent effect of an order issued pursuant to 14 C.F.R. 13.20 and, what's more, arbitrarily and capriciously misinformed Guam International Airport authorities that the Caribou was not "authorized to operate [on Guam]." (See Exh. B). Furthermore, Mr. Zeigler did not provide Jan's "with notice prior to issuance" of the July 31st order, even though such notice is mandatory under 14 C.F.R. 13.20(b).

3.  Not only did Mr. Zeigler fail to give the mandatory prior notice of his unauthorized order grounding the Caribou, Mr. Zeigler kept his order secret even after he issued it. As a result, on August 9, 2002, as the Caribou was preparing to taxi, the Guam Airport authorities denied ramp access to the Caribou.

4.  As a result, Jan's asked the Guam Airport authorities to justify their actions in denying ramp access. The authorities responded by informing Jan's that the FAA had revoked the Caribou's operating authority and by faxing Exh. B - Mr. Zeigler's July 31st email - to Jan's.

5.  The response of the Guam Airport authorities as described above is compelling and sufficient proof that Mr. Zeigler's July 31st directive is in substance and effect no different from an order issued pursuant to 14 C.F.R. 13.20 preventing the Caribou from flying under Part 375.30.

6.      However, Mr. Zeigler did not provide Jans's "with notice prior to issuance" of his order, even though such notice is mandatory under 14 C.F.R. 13.20(b).

7.      Mr. Zeigler's unauthorized order had, and continues to have, the effect of a legal grounding order issued under 14 C.F.R. 13.20.  That is to say, the FAA refuses to recognize Jan's Part 375.30 operating authority and Jan's is unable to fly the Caribou for its intended purpose.

8.      As a result of the events described above, especially being grounded without prior notice or any opportunity to respond, on August 13, 2002, pursuant to 14 C.F.R. 13.35, Jan's requested a hearing. (Exh. C).

9.      On September 19, 2002, the Office of the Regional Counsel denied Jan's request for a hearing on quintessential "catch 22" grounds:  since Mr. Zeigler had no authority to issue the §13.20 denial of authority order, it is "not really an order" under 14 C.F.R. 13.20, and therefor Jan's is not entitled to the hearing provided for by 14 C.F.R. 13.35.  (See Exh. D).  In other words, Mr. Zeigler is unauthorized cop, judge and jury and enforcer, and Jan's has no right to be heard or to a remedy.

<u>**Count I**</u>      <u>Mr. Zeigler acted outside the scope of his employment and authority and is subject to a formal complaint under 14 C.F.R. 13.5.</u>

10.      Paragraphs 1 through 9 are incorporated herein by reference.

11.      Mr. Zeigler's July 31st grounding order has the equivalent force and effect of, and is otherwise the same in substance, as an authorized grounding order issued pursuant to 14 C.F.R 13.20.  Proof of this is simple and compelling -- Guam Airport authorities grounded the Caribou on the authority of Mr. Zeigler's written communication to them that the Caribou "was not authorized to operate [on Guam]" and Jan's is unable to operate under Part 375.30.

12.      Only the Chief Counsel, the Deputy Chief Counsel, and each Assistant Chief Counsel (including Regional and Center Counsels) are authorized to issue orders such as the one Mr. Zeigler issued.  (See FAA Order 2150.3A, para. 1209(b); see also Exh. D hereto, 2d para.).

13.    Part 13.5 and formal complaints issued thereunder do apply to employees of the FAA who have acted outside the scope of their employment and authority. (See Part 13.5 (a)).

14.    Since Mr. Zeigler admittedly had no authority to issue his July 31st grounding order to Guam Airport authorities, his actions were personal and outside the scope of his employment and authority and, accordingly, subject to a formal complaint under 14 C.F.R. 13.5.

**Count II**    Zeigler's unauthorized order violates 14 C.F.R. § 13.20(b)

15.    Paragraphs 1 through 14 are incorporated herein by reference.

16.    The purpose of 14 C.F.R. 13.20(b) is to provide the person subject to an order pursuant to Part 13.20 prior notice and an opportunity to respond. Section 13.20(b) states:

> Unless the *Administrator* determines that an emergency
> exists and safety in air commerce requires the immediate
> issuance of an order under this section, the person subject
> to the order *shall be provided with notice prior to issuance.*

17.    Here, the Administrator neither determined that an emergency existed nor that safety in air commerce required the immediate issuance of Mr. Zeigler's order denying operating authority.

18.    Mr. Zeigler did not provide Jan's with the mandatory notice prior to issuing his order on July 31, 2002. What's more, Mr. Zeigler did not give afterwards but instead kept the order secret.

19.    Mr. Zeigler's personal acts and omissions constitute a violation of 14 C.F.R. 13.20(b) and a violation within the meaning of 14. C.F.R. 13.1.

20.    Mr. Zeigler's unauthorized grounding order dated July 31, 2002 constitutes a violation of 14 C.F.R. 13.20(b) and a violation within the meaning of 14. C.F.R. 13.1.

**Count III**     The unauthorized order violates due process.

21.     Paragraphs 1 through 20 are incorporated herein by reference

22.     Mr. Zeigler's unauthorized grounding order dated July 31, 2002 constitutes a violation of the due process requirement imposed by 14 C.F.R. 13.20(b) and therefore, an illegal taking of Jan's property.

C.     Relief requested.

1.     An investigation pursuant to 14 C.F.R., Subpart A.

2     A Letter of Correction pursuant to Part 13.11(b)(2) to immediately rescind the unauthorized July 31, 2002 grounding order and restore Part 375.30 operating authority.

3.     Assessment of civil penalties pursuant to Parts 13.15 and 13.16 according to proof.

4.     Actual and consequential damages according to proof.

5.     Attorney's fees and costs.

D.     Service of this Complaint

Pursuant to 14 C.F.R.13.5(d), this complaint should be served on the following person at the address indicated:

Mr. Lewis I. Zeigler
Federal Aviation Administration
San Francisco International Field Office
831 Mitten Road, Room 105
Burlingame, California 96010-1303

Submitted by:

David Ledger
Attorney for Jan's Helicopter Service, Inc.

DPL:jmc
3144146.1.051998-00034

----- Original Message -----
From: Wellington, George <George.Wellington@ost.dot.gov>
To: J. Walker (E-mail) <jwalker@kuentos.guam.net>
Sent: Tuesday, March 07, 2000 11:59 AM
Subject: Part 375/USDOT

> David--
> Sorry for the delay in responding, but we've now worked your
> questions through our legal people, and here are the answers:
>
> Scenario #1: With the company owning, operating, and crewing the
> Caribou itself, the operation would be authorized by regulation under
> section 375.30, and no additional DOT operating authority would be
required.
>
> Scenario #2: With a subsidiary involved, and thus direct or indirect
> compensation, the operation would require either a foreign aircraft permit
> under section 375.42, or an exemption under 49 U.S.C. 40109. Operations
> authorized by permit under Part 375 are strictly limited to six flights
per
> calendar year, and any operations in excess of that number could be done
> only if the operator received exemption authority under 40109 (FYI, 40109
is
> common carrier authority, of the type held, for example, by British
Airways
> or Air Canada). In either case, we could not act on the request until the
> Federal Aviation Administration had reviewed the operator and given us
> written clearance, and that could prove to be a time-consuming process,
> given the distances involved. So, from a timing/ease of operation point
of
> view, scenario #1 would present far fewer problems.
>
> Whether operating under Scenario #1 or #2, the operator would need
> to comply with applicable FAA requirements, including those in 14 CFR Part
> 91.
>
> I hope this helps. If you have any further questions, let me know.
> George

# EXHIBIT A




| Folders |
|---|
| Create Message |
| Preferences |
| Address Book |
| Log out |

Move to: [Sent ▾]

*ATT. MIKE*

**To:** gerardb@guamcell.net, dansn@guamcell.net

**From:** Lewis.I.Zeigler@faa.gov

**Date:** 31 Jul 2002, 04:09:11 AM

**Subject:**

Mr. Bautista and Mr. San Nicolas;

What can you tell me about a Philippine registered Caribou (DHC-4) that is supposed to be based on Guam and flying around the islands? Supposedly it used to be a U.S. registered aircraft and is hauling some small helicopter that are used on fishing boats. Whoever it is they aren't authorized to operate there.

Best regards,

Lew Zeigler

Message 21 of 28 (New

Move to: [Sent ▾]

# EXHIBIT B

# CARLSMITH BALL LLP

A LIMITED LIABILITY LAW PARTNERSHIP

BANK OF HAWAII BLDG., SUITE 401
134 WEST SOLEDAD AVENUE, P.O. BOX BF
HAGÅTÑA, GUAM 96932-5027
TELEPHONE (671) 472-6813   FAX (671) 477-4375
WWW.CARLSMITH.COM

August 13, 2002

**VIA FACSIMILE [(310) 725-6816]**
**and CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Federal Aviation Administration
Western Pacific Region
Office of the Regional Counsel
P.O. Box 92007
Worldway Postal Center
Los Angeles, California 90009-2007

Re:   Jans Helicopter Service, Inc; July 31, 2002 denial of operating authority at
      Guam International Airport; Request For Hearing Under 14 CFR § 13.35

Dear Regional Counsel:

1.   Introduction and background

        We are legal counsel for Jan's Helicopter Service, Inc.  Jan's is the legal and
registered owner of a Guam-based deHavilland Caribou DCH-4A, call sign RPC2702.  Jan's
uses the Caribou to transport helicopters, also owned by Jan's, to various location in Micronesia.
The helicopters are under contract to tuna boat owners who use them to find schools of tuna.
The Caribou operation is authorized by regulation under Part 375 -- Navigation of Foreign Civil
Aircraft Within the United States, specifically 14 CFR §375.30 -- Operations other than
commercial air operations.  On March 7, 2000, the U.S. Department of Transportation advised us
that no additional DOT operating authority would be required, so long as there was unity of
ownership between the Caribou and the helicopter being transported.  Jan's only transports
helicopters owned by Jan's.

HONOLULU · KAPOLEI · HILO · KONA · MAUI · GUAM · SAIPAN · LOS ANGELES · WASHINGTON, D.C. · MEXICO

# EXHIBIT C



On July 31, 2002, without the required prior notice, legal cause or justification, Lewis I. Ziegler of the FAA arbitrarily and capriciously issued a notice to Guam ATC that Jan's was not authorized to operate the Caribou (Exh. A). Not only did Mr. Ziegler fail to give prior notice of the so-called revocation of authority as required by 14 CFR 13.20(b), Jan's remained completely unaware of the "revocation" until August 9, 2002, when Guam ATC denied ramp access to the Caribou based on Mr. Ziegler's July 31st directive.

But there is much more at stake than a single instance of denied ramp access. Unfortunately, at the time Guam ATC denied ramp access, Jan's was preparing to transport a badly needed helicopter, likewise owned by Jan's, to a waiting customer. As a result, Mr. Ziegler's offhand and illegal revocation of operating authority resulted in an unfulfilled contract and substantial loss of income to Jan's, the precise amount of which has yet to be determined, but could exceed US$1,080,000. Jan's will look to the FAA to recover its losses and damages. Pursuant to 14 CFR § 13.20(c), Jan's hereby contests the FAA's July 31, 2002 revocation of operating authority and requests a hearing on the matter.

2   DOT operating authority was confirmed on March 7, 2000

In early 2000, Jan's corresponded with the DOT regarding operating authority for the Caribou. After exchanging a number of emails, DOT confirmed that its legal department had worked through the issues and determined that operation was authorized by regulation under Part 375 -- Navigation of Foreign Civil Aircraft Within the United States, specifically 14 CFR §375.30 -- Operations other than commercial air operations (Exh. B). Furthermore, DOT advised that no additional DOT operating authority would be required, so long as there was unity of ownership between the Caribou and the helicopter being transported (Exh. B). As noted above, Jan's only transports helicopters owned by Jan's.

3.   Mr. Ziegler's July 31st 2002 illegal revocation of operating authority must be rescinded.

The revocation of authority, Exh. A., warrants close scrutiny and must be rescinded for a number of reasons.

a.   It is arbitrary and capricious.

Exh. A is self-contradictory and arbitrary and capricious. First, Mr. Ziegler admits he knows little, if anything, about the Caribou. He writes, "What can you tell me about a Philippine registered Caribou .... that used to be U.S. registered? Second, he admits he knows little, if anything, about Jan's. He writes "Whoever it is, they aren't authorized .... Nonetheless, armed with little or no information, Mr. Ziegler revokes operating authority -- "....



they aren't authorized to operate [on Guam]." Third, though purporting to revoke operating authority, Exh. A. cites no authority whatsoever.

b.    It violates 14 CFR § 13.20(b).

The purpose of §13.20(b) is to provide the person subject to an order under §13.20[1] prior notice and an opportunity to respond, that is to say, *due process of law.* Specifically, 13.20(b) states:

(b)    Unless the *Administrator* determines that an emergency exists and safety in air commerce requires the immediate issuance of an order under this section, the person subject to the order *shall be* provided with notice prior to issuance.

Section 13.20(b) makes prior notice non-discretionary - prior notice *shall be* provided . What's more, a finding of an emergency in air commerce which warrants a cease and desist order without prior notice is a right reserved to the *Administrator*, not Mr. Ziegler. Here, even though the Administrator did not declare an emergency in air commerce, no prior notice of the order revoking operational authority order was given to Jan's. What's more, until Guam ATC bushwhacked Jan's on August 9, 2002 when the pilot had the Caribou ready to taxi, Jan's had no notice at all of the "order." At that moment, Jan's pilot came up with an expression to aptly describe what had happened, though it is unsuitable for print here.  In the circumstances, Jan's was denied due process of law, the July 31st revocation arbitrarily and capriciously violates the law and therefore must be rescinded, and Jan's is entitled to recover it losses and damages from the FAA.

4.    Conclusion & relief requested.

The appalling results of August 9, 2002 at the Guam International Airport ramp, without more, demonstrate the purpose underlying the mandatory prior notice provision of 14 CFR §13.20(b).  The simple fact is that had Mr. Ziegler followed the law, or taken a moment to enquire about the authority DOT had confirmed for the Caribou on March 7, 2000, more likely than not none of this would have occurred.  Unfortunately, Mr. Ziegler disregarded due process and instead chose to arbitrarily and capriciously revoke operating authority and dismiss the consequences.  Jan's requests the following relief:

---

[1]Even though the July 31, 2002 letter cites neither authority nor other legal justification, it has the effect of a cease and desist and denial order issued under authority of 14 CFR § 13.20 - Orders of compliance, cease and desist orders, orders of denial, and other orders.

1.  Immediate recission of the illegal July 31st 2002 revocation of authority.

2.  Written prior notice of any question regarding its authority under 14 CFR § 375.30.

3.  Damages for loss of contract revenues and consequential damages caused as a result of the Caribou being illegally denied ramp access on August 9, 2002.

4.  A hearing on the earliest possible date.

Respectfully submitted,

David Ledger
Attorney for Jan's Helicopter Service, Inc.

DPL:jmc
3144170.1.051998-00011

# Message

dansn@guam

Folders

| Folders |
| Create Message |
| Preferences |
| Address Book |
| Log out |

Move to: Sent

*ATT. MIKE*

**To:** gerardb@guamcell.net, dansn@guamcell.net

**From:** Lewis.I.Zeigler@faa.gov

**Date:** 31 Jul 2002, 04:09:11 AM

**Subject:**

Mr. Bautista and Mr. San Nicolas;

What can you tell me about a Philippine registered Caribou (DHC-4) that is supposed to be based on Guam and flying around the islands? Supposedly it used to be a U.S. registered aircraft and is hauling some small helicopter that are used on fishing boats. Whoever it is they aren't authorized to operate there.

Best regards,

Lew Zeigler

Move to: Sent

## EXHIBIT A

From: Wellington, George <George.Wellington@ost.dot.gov>
To: J. Walker (E-mail) <jwalker@kuentos.guam.net>
Sent: Tuesday, March 07, 2000 11:59 AM
Subject: Part 375/USDOT


> David--
> Sorry for the delay in responding, but we've now worked your
> questions through our legal people, and here are the answers:
>
> Scenario #1: With the company owning, operating, and crewing the
> Caribou itself, the operation would be authorized by regulation under
> section 375.30, and no additional DOT operating authority would be
required.
>
> Scenario #2: With a subsidiary involved, and thus direct or indirect
> compensation, the operation would require either a foreign aircraft permit
> under section 375.42, or an exemption under 49 U.S.C. 40109.  Operations
> authorized by permit under Part 375 are strictly limited to six flights
per
> calendar year, and any operations in excess of that number could be done
> only if the operator received exemption authority under 40109 (FYI, 40109
is
> common carrier authority, of the type held, for example, by British
Airways
> or Air Canada). In either case, we could not act on the request until the
> Federal Aviation Administration had reviewed the operator and given us
> written clearance, and that could prove to be a time-consuming process,
> given the distances involved.  So, from a timing/ease of operation point
of
> view, scenario #1 would present far fewer problems.
>
> Whether operating under Scenario #1 or #2, the operator would need
> to comply with applicable FAA requirements, including those in 14 CFR Part
> 91.
>
> I hope this helps.  If you have any further questions, let me know.
> George


# EXHIBIT B

CARLSMITH BALL LLP

DAVID P. LEDGER
134 West Soledad Avenue
Bank of Hawaii Bldg., Suite 401
P.O. Box BF
Hagåtña, Guam 96932-5027
Tel. No. (671) 472-6813

Attorneys for Respondent
Jans Helicopter Service, Inc.

## CERTIFICATE OF SERVICE

I, David P. Ledger, hereby certify and state that:

1.   I am a United States citizen over the age of 18 years;

2.   I am an Attorney of the law firm of Carlsmith Ball LLP.

3.   On the 13th day of August 2002, I caused to be served, a copy of the Request

for Hearing, via regular and certified mail to the following:

Federal Aviation Administration
Western Pacific Region
Office of the Regional Counsel
Post Office Box 92007
Worldway Postal Center
Los Angeles, California 90009-2007

Hearing Docket, Room 924A
Federal Aviation Administration
800 Independence Avenue, S.W.
Washington, D.C. 20591

Federal Aviation Administration
Don M. Hamilton
Clarence Kanae
Western Pacific Region
Honolulu Flight Standards District Office
135 Nakolo Place
Honolulu, Hawaii 96819-1845

Lewis I. Ziegler
Federal Aviation Administration
Western Pacific Region
Office of the Regional Counsel
Post Office Box 92007
Worldway Postal Center
Los Angeles, California 90009-2007

DATED this _13th_ day of August 2002.

DAVID P. LEDGER

3144193.1.051998-00011



U.S. Department
of Transportation
**Federal Aviation
Administration**

**SEP 19 2002**

David P. Ledger, Esq.
CARLSMITH BALL LLP
134 West Soledad Avenue, Suite
  401
P.O. Box BF
Hagatna, Guam 96932-5027

Dear Mr. Ledger:

Re: Requests For Hearings

This is a final response to your requests that the Federal Aviation Administration (FAA) convene hearings to resolve the matters raised in your electronic mail (e-mail) to Lewis Ziegler on August 9, 2002, regarding the operations of the Philippine registered Caribou owned by your client, Jans Helicopter Service and your letters to me dated August 13, 2002, regarding the Caribou and raising another matter, the letter issued by the Honolulu Flight Standards District Office to another of your clients, Americopters LLC, directing them to cease operating from the heliport located on the roof of Chuck's Steakhouse in Upper Tumon, Guam.

In support of your requests for hearings in these matters, you cite to Federal Aviation Regulation (FAR) 13.20(b). This FAR is part of Subpart C of Part 13. Subpart C applies to legal enforcement actions, and FAR 13.20 sets forth the procedures for requesting a hearing where the FAA has issued orders of compliance, cease and desist orders, orders of denial, and other orders. Only the following individuals have authority to issue such orders, the Chief Counsel, the Deputy Chief Counsel, and each Assistant Chief Counsel (including Regional and Center Counsels). See FAA Order 2150.3A, para. 1209(b). No such orders were issued with respect to the operations of the Caribou by Jans Helicopter Service or with respect to Americopters flights using the Chuck's Steakhouse heliport.

**EXHIBIT D**

Neither Mr. Ziegler's e-mail to the Guam International Airport Authority nor Mr. Kanae's letter to Mr. Rufus Crowe constitutes an order as that term is contemplated by the Part 13, Subpart C. Therefore your requests are denied.

If you consider filing a formal complaint under FAR 13.5, you should be aware that that section does not apply to complaints against the Administrator or complaints against FAA employees acting within the scope of their employment. FAR 13.5(a).

Sincerely,

Monroe P. Balton
Regional Counsel



**U.S. Department
of Transportation**

**Federal Aviation
Administration**

800 Independence Ave., S.W.
Washington, D.C. 20591

November 22, 2002

<u>CERTIFIED MAIL - RETURN RECEIPT REQUESTED</u>

Carlsmith Ball LLP
Attn: Mr. David Ledger
134 West Soledad Avenue
P.O. Box BF
Hagåtña, Guam 96932-5027

> Re: <u>Complaint Under 14 C.F.R. § 13.5 For An Order
> To Rescind FAA's July 31, 2002, Order Grounding
> Caribou PRC2702 And Revoking Part 375.30
> Operating Authority</u>

Dear Mr. Ledger:

This responds to your September 23 letter to the Federal Aviation Administration's (FAA) Office of the Chief Counsel, which you styled as a formal complaint against Mr. Lewis F. Zeigler, an Aviation Safety Inspector assigned to the agency's San Francisco International Field Office. Your letter asserts that Mr. Zeigler acted outside the scope of his employment by issuing an order of a type described in 14 C.F.R. § 13.20 when he had no authority to do so. I have reviewed your letter and its attached exhibits and have determined that the document issued by Mr. Zeigler was not tantamount to an order, nor was Mr. Zeigler acting outside the scope of his employment.

As you indicated in your letter, on July 31, 2002, Mr. Zeigler sent an E-mail message to Messrs. Bautista and Nicolas, who were, according to your letter, employees of the Guam International Airport Authority. His message inquired about certain activities of an unidentified Caribou aircraft operating in Guam, and concluded by stating: "Whoever it is they aren't authorized to operate there." Your letter further indicates that, after receiving Mr Zeigler's E-mail message, the Guam International Airport authorities denied ramp access to the Caribou aircraft operated by your client, Jan's Helicopter Service, Inc. (Jan's), thereby effectively grounding the Caribou. You state further that the airport authorities responded to an inquiry from Jan's asking them to justify their actions by informing Jan's that "the FAA had revoked the Caribou's operating authority and by faxing Exh. B - Mr. Zeigler's July 31st email - to Jan's."



**EXHIBIT** G

It appears that Jan's was operating the Caribou under Part 91 and had not been issued any permit or authority by the United States Department of Transportation (DOT). Your letter states that, on March 7, 2000, DOT advised Jan's that "no additional DOT operating authority would be required." In apparent support of that statement, you attached a copy of an E-mail dated March 7, 2000, from DOT's George Wellington sent to "J. Walker" but directed to "David." Mr. Wellington's E-mail addressed two scenarios that were based on questions that had been sent to him. You appear to be relying on Mr. Wellington's conclusion regarding his "scenario #1" to support your statement.

> Scenario #1 is: "With the company owning, operating, and crewing the Caribou itself, the operation would be authorized by regulation under section 375.30, and no additional DOT operating authority would be required."

Nothing was stated concerning the Caribou's hauling the helicopters or the ultimate use of the helicopters after they reached their destination.

> Scenario #2 is: With a subsidiary involved, and thus direct or indirect compensation, the operation would require either a foreign aircraft permit under section 3775.42, or an exemption under 49 U.S.C. 40109. Operations authorized by permit under Part 375 are strictly limited to six flights per calendar year, and any operations in excess of that number could be done only if the operator received exemption authority under 40109 (FYI, 40109 is common carrier authority, of the type held, for example, by British Airways . . . ).

Mr. Wellington concluded by stating:

> In either case, we could not act on the request until the Federal Aviation Administration had reviewed the operator and given us written clearance, and that could prove to be a time-consuming process, given the distances involved. So, from a timing/ease of operation point of view, scenario #1 would present far fewer problems.

Mr. Wellington's E-mail did not discuss any specifics of Jan's operation; nor did it venture an opinion on whether Jan's operations were commercial air operations under the definition set forth in 14 C.F.R. § 375.1, which would render section 375.30 inapplicable and require Jan's to obtain DOT authority.

As the Regional Counsel for the FAA's Western Pacific Region explained in his August 23, 2002, letter to you, Mr. Zeigler's office has safety oversight responsibility for all foreign air carrier operations into the United States from the Asia-Pacific region. The Regional Counsel further explained that Mr. Zeigler's E-mail inquiry was prompted by a telephone call he received from an official of the Guam International Airport Authority informing him that a Philippine-registered Caribou aircraft was using Guam International Airport as a base of operations to haul helicopters to other islands in the Western part of the Pacific Ocean. Because no one in his office was aware of any such foreign operations in Guam, Mr. Zeigler's

**DECLARATION OF SERVICE**

I, Elyze McDonald, hereby declare under penalty of perjury of the laws of the United States, that on the 18th day of July 2003, I will cause to be served, via hand delivery, a true and correct copy of **PLAINTIFF JAN'S HELICOPTER SERVICE, INC.'S OPPOSITION TO DEFENDANT FEDERAL AVIATION ADMINISTRATION'S MOTION TO DISMISS FOR LACK OF JURISDICTION; EXHIBITS A - G; DECLARATION OF SERVICE** upon Defendant's Counsel of record as follows:

> Mikel W. Schwab, Esq.
> Office of the United States Attorney
> 108 Hernan Cortez Avenue
> Suite 500, Sirena Plaza
> Hagåtña, Guam 96910

Dated this 18th day of July 2003.

_____
ELYZE McDONALD