**FILED**
DISTRICT COURT OF GUAM

AUG 21 2003

MARY L. M. MORAN
CLERK OF COURT

*13*

# IN THE DISTRICT COURT OF GUAM

## TERRITORY OF GUAM

* * *

| | |
|---|---|
| JAN'S HELICOPTER SERVICE INC., | ) **COURT OF APPEALS** |
| | ) **CASE NO.** |
| Plaintiff, | ) |
| | ) |
| vs. | ) CIVIL CASE |
| | ) NO. 03-00002 |
| FEDERAL AVIATION ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

TRANSCRIPT OF PROCEEDINGS

BEFORE

THE HONORABLE JOHN S. UNPINGCO

**MOTION TO DISMISS FOR**

**LACK OF SUBJECT MATTER JURISDICTION**

**FRIDAY, AUGUST 1, 2003**

Wanda M. Miles
Official Court Reporter
District Court of Guam

ORIGINAL

1 | **APPEARANCES:**

2 | **FOR THE PLAINTIFFS:**

3 | CARLSMITH BALL LLP
Attorneys At Law
4 | BY:  David Ledger, Esq.
134 West Soledad Avenue
5 | Bank of Hawaii Building, 4th Floor
Hagatna, Guam  96910

6 |

7 |

8 | **FOR THE DEFENDANT:**

9 | LEONARDO M. RAPADAS
United States Attorney
10 | BY:  MIKEL W. SCHWAB, Esq.
Assistant United States Attorney
11 | Sirena Plaza, Suite 500
108 Hernan Cortez Avenue
12 | Hagatna, Guam  96910

13 |

14 | Federal Aviation Administration
Office of the Chief Counsel
15 | BY:  KENNETH CAPLAN, Esq.

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

1    HAGATNA, GUAM; FRIDAY, AUGUST 1, 2003; 10:33 A.M.

2                          * * *

3         THE CLERK:  Civil Case 03-00002, Jan's

4    Helicopter Service Inc. versus the Federal Aviation

5    Administration, and Civil Case 03-00005, Americopters

6    LLC versus Federal Aviation Administration, motion to

7    dismiss for lack of subject matter jurisdiction.

8         Counsel, please state your appearances.

9         MR. SCHWAB:  Your Honor, Mikel Schwab on

10   behalf of the United States; and by courtesy of the

11   Court, I have Kenneth Caplan on the phone as well.

12        THE COURT:  Okay.

13        MR. LEDGER:  Good morning, Your Honor.  David

14   Ledger on behalf of Americopters and on behalf of

15   Jan's.  And with me is Mr. John Walker representing

16   both companies.

17        THE COURT:  Mr. Caplan on the line?

18        MR. CAPLAN:  Yes, sir.

19        THE COURT:  State your appearance.

20        MR. CAPLAN:  Kenneth Caplan, Office of Chief

21   Counsel, Federal Aviation Administration.

22        THE COURT:  Gentlemen, I've read the papers

23   here.  And, Mr. Caplan, I'm kind of disappointed in you

24   in not including with your brief Air One Helicopters

25   Inc. versus Federal Aviation Administration decided

1  June 12, 1996; it seems to rule squarely against you.

2  I'm kind of puzzled as to why you didn't include that

3  in your brief.  You do have an ethical obligation to

4  this court; because we're only a territory doesn't mean

5  we're not a Federal Court.

6  　　　　　MR. CAPLAN:  I understand, Your Honor.  I

7  don't believe the Air One Helicopters case is

8  necessarily pertinent here, Your Honor.

9  　　　　　MR. SCHWAB:  Your Honor, if I may?

10  　　　　　THE COURT:  Yes.

11  　　　　　MR. SCHWAB:  The case of Air One Helicopters

12  is something that I included.  I ran across it last

13  night and thought it was very relevant for one reason,

14  and that's the underlying charge, that the bureaucratic

15  snag can be treated as a final order.

16  　　　　　THE COURT:  That's right.

17  　　　　　MR. SCHWAB:  It doesn't detract from our basic

18  argument which is the argument I've also added with

19  Mr. Caplan, it really doesn't detract from our basic

20  argument that it belongs in the Ninth Circuit because

21  it's the Ninth Circuit that gives relief in that --

22  　　　　　THE COURT:  Well, but the issue here is this

23  is a bureaucracy, a bureaucratic snag, that's the core

24  issue here.  And that's what's shared by this case of

25  Air One Helicopters.

1          And, Mr. Caplan, I wish you'd take your
2    blinders off because that's exactly what's happened
3    here.  And you argued this case so you knew it was a
4    bureaucratic snag, and that's what we're facing here in
5    these two cases before me today.  So you're cautioned,
6    you better start looking and look well at the cases
7    that are relevant, especially those that you yourself
8    argued before the Ninth Circuit, because I don't take
9    it lightly when lawyers keep things away from the
10   court, I think that's very unfair.  And you have an
11   ethical duty before this court to let known the
12   authorities that are against you.  You shouldn't let
13   your -- or put your co-counsel in a position where he
14   has to be the one speaking up for you.  I don't like
15   that at all, so you better change your ways.
16          MR. CAPLAN:  I understand, Your Honor.
17          THE COURT:  Now give me your best shot,
18   defendant FAA.  Who's speaking?
19          MR. CAPLAN:  Your Honor, with respect to the
20   case involving the Caribou aircraft, I believe that was
21   Jan's Helicopter.
22          THE COURT:  Yes.
23          MR. CAPLAN:  The position of the agency is
24   that, that in the first instance, in order to operate
25   in the United States, in the U. S. territories and its

possessions, a foreign registered aircraft, such as
this one, requires economic authority from the
Department of Transportation. And Jan's Helicopters
did not seek and/or obtain that authority, and
therefore the statement of the inspector to that effect
was that the aircraft could not operate legally in the
United States was the correct position. And that Jan's
Helicopters remedy is simply to seek that authority
from the Department of Transportation, which is of
course separate and apart from the Federal Aviation
Administration.

THE COURT: Yeah. But what you're saying to
them, oh, in our opinion, by the way, is that this is
not the final word on this thing. We're just telling
you, go to another agency, but our opinion is not a
final ruling on this, but you still can't land and use
the facilities, that's the other half of the equation.

MR. CAPLAN: I don't believe that the
statement from the inspector to that effect, and I
think that was one ruse to the Airport Authority was --
constituted a final action on the part of the agency.
That was the inspector's opinion, and we would agree,
at least from what I understand the nature of the
operation that that was probably the correct opinion,
because it was a commercial operation and required

1  authority from the Department of Transportation, and it
2  wasn't fair, and therefore, Jan's Helicopters could not
3  operate legally under those circumstances.  And that --
4  but it wasn't a final agency decision, it wasn't an
5  order that the agency itself considered to be final.

6          In fact, I believe it was the September letter
7  from Mr. Balton, who is the regional counsel for the
8  FAA for the Western Pacific Region, that made it very
9  clear to Mr. Ledger that in neither of these cases were
10  the actions of these inspectors to be considered to be
11  final actions of the agency, because those inspectors
12  weren't authorized to make those kinds of decisions,
13  and that only he as the regional counsel or certain
14  other individuals chosen or delegated could do so, and
15  therefore, these were not decisions that were in effect
16  binding on the plaintiffs in these cases.

17          THE COURT:  Well, let me ask you something
18  here, Mr. Caplan.  Let's suppose that this outfit had
19  chosen to violate Balton's letter and whatever other
20  direction that they were given that's not a final order
21  by the FAA, okay, let's suppose that they said, well,
22  forget this, we'll still land anyway; what would happen
23  to them?

24          MR. CAPLAN:  If they chose to violate?

25          THE COURT:  Yes.

1      MR. CAPLAN:  Then they would act at their
2  peril, certainly, because the government, the FAA could
3  certainly take appropriate action to seek either
4  compliance through perhaps a cease and desist order, or
5  perhaps seek an enforcement action to take punitive
6  actions through either certificate action or civil
7  penalty.  They would act at their peril certainly.
8      THE COURT:  Well, that's the problem.  You
9  have just said what is the problem here, they act at
10 their peril, meaning that there are sanctions that can
11 be imposed, court orders that can be imposed, possibly
12 even contempt.
13     MR. CAPLAN:  Yes, sir.
14     THE COURT:  You're saying on the one hand
15 that this is not a final action, you're saying you
16 can't land, but on the other hand, you know, this is
17 not a final order.  Yet, if you violate this order I
18 will smack your fingers and crush them.  You know, how
19 can you have it both ways?  I have a great deal of
20 difficulty with you talking out of both sides of your
21 mouth in this kind of argument.
22     MR. CAPLAN:  Your Honor, we don't believe
23 we're doing so.  We believe that in this case and under
24 any statute or federal regulations, the persons that
25 are subjected to it have an obligation to obey those

1   regulations, those statutes, and act at their peril

2   when they fail to do so.  And that it doesn't require

3   the agency to take affirmative action to seek

4   prosecution, because that's part of the prosecutorial

5   discretion here as to whether to act or not to act.

6        THE COURT:  Well, you're side-stepping the

7   issue here.  The issue is that that action, regardless

8   of whether you call it a final act, a final order or

9   whatever, that action has consequences when it's

10  violated, okay.  But yet, you have issued that order

11  without giving the required requisite hearing that's

12  required under the statute.  That's the issue here.

13  You know, it's not -- prosecutorial discretion has

14  nothing to do with it.

15       The issue here is whether this court has

16  jurisdiction over this case, whether this ruling, or

17  this letter or whatever, however you choose to

18  characterize it, final response or whatever, is an

19  order that should be appealed to the Ninth Circuit,

20  whether this court has jurisdiction over that.  That's

21  the nub of the issue here.  And it seems to me that you

22  are saying, well, this is not a final order, on the one

23  hand, but the District Court can't touch it because the

24  Court of Appeals is the one with jurisdiction.  See

25  where I'm heading here?

1          MR. CAPLAN:  I think I understand, Your Honor.

2     And I, with all due respect to the court, I don't think

3     I agree with that, Your Honor.

4          THE COURT:  Well, you don't have to agree with

5     me, it's just that it seems to me the logic of it is

6     very compelling.  And I'm not angry at you, I'm just

7     kind of excited, because I'm following this logic, and

8     it's leading me to a bureaucratic snag.

9          Where are these people going to go?  We're

10    halfway around the world; where are these people going

11    to go for direction?  They've got to go to the local

12    FAA person, FAA person shows them this order that has

13    punitive sanctions, even criminal sanctions possibly

14    based on what you have said, yet you maintain that that

15    is not a final order appealable to the Ninth Circuit.

16    What's the logic here?

17         MR. CAPLAN:  Well, I understand what you're

18    saying, Your Honor, but I believe that the answer is

19    that there are times when that is -- in effect the

20    result is that the government is not required to take

21    affirmative action in these cases to resolve an issue.

22    That the, in effect, the litigants here, the plaintiffs

23    have been placed on notice by the federal government

24    that if they engage in this action, it may, the opinion

25    of at least knowledgeable officials, be inconsistent

1  with the regulations and the statute, and that they act
2  at their peril.
3        I don't think I can go much beyond that, sir.
4  I understand what you're saying, though, that it places
5  these activities in limbo, that they run the risk of
6  being prosecuted perhaps, of having a cease and desist
7  order taken against them.  But, of course, if that
8  happens, Your Honor, they will then have the
9  opportunity to litigate the agency's position, and to
10  argue that what they did was appropriate.  It may
11  affect their ability to take action in the meantime.
12  They may take the risk but --
13        THE COURT:  Yeah.  Well, the main thing here
14  is that it seems, we're looking at fairness here too,
15  and that is, that for a governmental agency to have so
16  much power and yet to be trying to, on the one hand to
17  try to say, well, it's not really a final decision; on
18  the other hand saying, well, you can't take us to the
19  court in that jurisdiction, you've got to go to the
20  Ninth Circuit.  You know, we're out in the Western
21  Pacific in the middle of nowhere.
22        And that's the other thing troubling me, is
23  that for a governmental agency to be fence sitting,
24  if I may use that term, fence sitting and then choosing
25  the route, tactically choosing the route, when it's

1   engaged in litigation, the route it's then going to

2   ultimately take as to the characterization of its

3   actions, you know, there's a question of fairness here.

4           MR. CAPLAN:  May I respond to that, Your

5   Honor?

6           THE COURT:  Well, let me just finish my

7   thought and then I'll give you an opportunity.

8           We're not a huge land mass out here, we're a

9   bunch of scattered little specks in the ocean, and

10  things like landing rights have a bit of value to them

11  out here.  You know, where else are they going to go?

12  Of course they have to go through the FAA, and the FAA

13  has to -- if the FAA is a regulatory agency, then, by

14  gosh, act like a regulatory agency and state the

15  decision, state the opinion and then let's go forward.

16  But to do this kind of a thing is unfair, that is that,

17  oh, this is just an advisory opinion, but you can't

18  litigate it in District Court, you've got to go to the

19  Court of Appeals.  And what you're saying in the second

20  part is that, but it is a final opinion.  You see where

21  I'm kind of really -- seems to be --

22          MR. CAPLAN:  Yes, I understand, Your Honor.

23          THE COURT:  I'm really, you know, that's hard

24  to break out of.  So enlighten me.

25          MR. CAPLAN:  Well, Your Honor, I will try to.

1        I think I would like to start by saying that

2   assuming that, you know, that they're correct in their

3   position that these were final positions, agency

4   decisions and that they are judicially reviewable,

5   I would like to go to the second point about where

6   they're reviewable.  And we believe, the agency

7   believes that there is no question but they can only

8   be reviewed by the Ninth Circuit, and that they

9   certainly, the plaintiffs would certainly get a full

10  and fair review by the Ninth Circuit.

11       And that they will be able to litigate these

12  issues, not only litigate the issue of whether it was

13  or was not a final decision, but if it were final

14  decisions, whether the agency acted appropriately.

15  But we believe, truly believe that that's where it

16  needs to be litigated, not in District Court.

17       THE COURT:  Okay.  Anything else, Mr. Caplan?

18       MR. CAPLAN:  Not from me, sir.  And, Your

19  Honor, I apologize deeply about the Air One, I did not

20  intend at all to mislead the court, I do regret that

21  very much.

22       THE COURT:  Okay.  Accepted.  Anything else?

23       MR. SCHWAB:  Your Honor, Mr. Caplan is being

24  gracious.  I should take full responsibility for any

25  case that's cited or not cited; that was my signature

Wanda M. Miles
Official Court Reporter
District Court of Guam

1    and my submission.  I do apologize.  When I did look at

2    it and discussed it with Mr. Caplan, he didn't object

3    to my bringing it into court.  It doesn't, of course,

4    undermine our underlying argument that we're in the

5    wrong court.

6         But as to this argument with Jan's Helicopter,

7    everything Your Honor has been saying, I have to

8    express some amusement because I've had the same

9    concerns myself over the last two days of interaction

10   with Mr. Caplan on this.  But as to Jan's Helicopter,

11   I think it's a little different than it is as to

12   Americopters.  In Jan's Helicopter, the analogy would

13   be as if a policeman came in, saw someone renting a car

14   and said, hey, you don't have a driver's license, he's

15   not pulling them over, he's not giving them a ticket,

16   he's just saying, you don't have a license.

17        And in Jan's Helicopter case, they've got

18   a commercial airplane that's registered in the

19   Philippines and they're doing business, and they say,

20   hey, you need a license; the airport agrees they need a

21   license, when I look at it I agree they need a license,

22   and they need to go to Department of Transportation to

23   get that.  So going back to FAA and putting the hammer

24   on them and saying, give us a final order, give us a

25   hearing, is not appropriate.  Go back to DOT.  And

1   we're just bystanders that are certainly official

2   bystanders here saying, you're not supposed to be

3   driving.

4       THE COURT: But let's take the logic to the

5   other conclusion. What happens if they go to DOT and

6   DOT says, well, we can only do so much for you, the

7   rest is up to FAA because they control the air traffic

8   or they control fines.

9       MR. SCHWAB: Then we're back at Americopters.

10      THE COURT: That's right.

11      MR. SCHWAB: We're in sort of the washing

12  machine where you're spinning.

13      THE COURT: That's right, and we need to break

14  out of it. That's all I'm looking for is a way to

15  break out of this snag.

16      MR. SCHWAB: And without getting into the next

17  case, I'll just say that that takes place in the Ninth

18  Circuit.

19      THE COURT: Yes. So that's your position?

20      MR. SCHWAB: It is, Your Honor.

21      THE COURT: Thank you.

22      MR. SCHWAB: Thank you.

23      THE COURT: Let's hear from the plaintiffs.

24  Mr. Ledger.

25      MR. LEDGER: Good morning, Your Honor. Thank

1    you.

2          So what we've heard so far, at least to some

3    extent, is more of the same, more punting, more hit and

4    run, more dodging, and an attempt to drag the court

5    into trying to resolve the dispute on the merits.  As

6    to the reference to the DOT, it has nothing to do with

7    the reason we're here this morning.  We're here this

8    morning on a jurisdictional argument.

9          And in terms of listening to what the court

10   has had to say, in terms of the effect of the initial

11   communications that were put out by the FAA, and as the

12   court is aware, when we tried to utilize the

13   administrative procedure to the letter we were told we

14   weren't entitled to do that because the orders weren't

15   final.

16         Now with respect to Jan's, I'd like to put

17   something -- I'd like to put that case in a little bit

18   clearer perspective, perhaps something that was lost on

19   the court or was not indicated early on.  And this in

20   effect goes to one of our arguments that we're making

21   in favor of jurisdiction, which is the deprivation of

22   constitutional due process.

23         And it's Exhibit A in the Jan's case which is

24   essentially the, call it what you want, we called it an

25   order.  That's the communication from Mr. Ziegler to

1    the Airport Authority essentially grounding Caribou;

2    and not only was there not any notice of that order

3    given to Jan's. And Mr. Walker was the pilot of the

4    aircraft on the day of this event, Mr. Walker went to

5    the airport and crewed the airplane, prepared it to

6    fly, taxied it to the runway, requested clearance from

7    the Guam Airport Authority, and at that point was told,

8    sorry, John, you're grounded, you can't fly. Well, why

9    not.

10        Well, Mr. Walker goes back to his office,

11    calls the airport, says, what's the problem. And in

12    response to that question, Mr. Ziegler's e-mail was

13    faxed to Mr. Walker.

14        Now, again, to put it in perspective of

15    fairness, the man goes to the airport, crews and fuels

16    his airplane to do basically what was amounting to a

17    maintenance flight, had nothing to do with this

18    underlying dispute as to whether it was a commercial

19    activity authorized by DOT or not, and he's told he

20    can't fly.

21        Now, the due process violation of that to me

22    is pretty apparent. And whether or not there's

23    jurisdiction in this court because the order was final

24    or not final, or whether it's reviewable by the Ninth

25    Circuit, there hasn't been any reply or contrary

1    argument to the fact that we're entitled to be here to

2    litigate that constitutional violation.  There was no

3    due process whatever, they didn't follow their own CFR.

4    And in addition, the pilot goes out and fires up the

5    airplane and was told he can't fly it.

6            So aside from any issue of whether the order

7    was final, and obviously it's fence sitting and they're

8    trying to have it both ways, there's no reason why we

9    can't be here and litigate the constitutional

10   violation; this court has jurisdiction over that claim.

11           I also notice in the papers that one of the

12   end runs that they're attempting is that, well,

13   Mr. Ziegler's order, letter, call it what you will,

14   really didn't do anything.  It was the Guam Airport

15   Authority that shut the Caribou down, so if you've got

16   a beef, take it to them.  Well, that's pretty

17   transparent.  I mean, Mr. Ziegler sent a letter to the

18   Airport Authority, this aircraft is not authorized to

19   fly, the Airport Authority did what it was supposed to

20   do and followed what Mr. Ziegler said, they grounded

21   the airplane.  So it's just ludicrous for them to come

22   in here and say, well, it's not our problem, it's the

23   Airport Authority's problem.

24           Again, the issue that's been raised with

25   respect to whether or not the aircraft was authorized

1  to do what it was doing under DOT regulation is just

2  more of the same, more hit and run; that's the

3  underlying merits of the case, and it has nothing to do

4  with this morning's proceedings.  It is a different

5  subject, it is a different issue from the

6  constitutional violation that we allege occurred.

7  But that's for another day, it's not for this morning.

8        So I don't think that the FAA has in their

9  verbal reply today come up with any compelling reason

10  that the motion should be entertained, and we've asked

11  the court to retain jurisdiction over the claims as

12  stated in the complaint.

13        That's all I have, Your Honor.  If the court

14  has questions?

15        THE COURT:  No, thank you.  Your position was

16  very well stated.

17        MR. LEDGER:  Thank you.

18        THE COURT:  Appreciate the way you have

19  expressed it.

20        Any few words of rebuttal from the defense?

21  This is their motion.

22        MR. SCHWAB:  Your Honor, I would just disagree

23  on one thing, that the hit and run analogy I think is

24  incorrect.  I think what the FAA is doing, which they

25  have to do as officials, is point out the obvious;

1  someone is operating on the tarmac without the proper

2  permit, they have to say it.  It looks that way to

3  everyone who looks at it, it looks like they're

4  registered in the Philippines, they're doing business

5  by transporting things down to the islands, they're in

6  commerce.  The FAA, unlike in the Americopters case,

7  isn't the one that grants the relief on that, it's the

8  Department of Transportation.

9         Thank you, Your Honor.

10        THE COURT:  Thank you.  Okay.  The court is

11  going to rule, and then follow up with a more complete

12  ruling -- I shouldn't say more complete ruling -- it

13  will rule, and it will expand on the rationale of its

14  ruling in a written order to follow.

15        The court's first ruling is that the Zeigler

16  July 31st, 2002 e-mail which resulted in the grounding

17  of the Caribou and Inspector Kanae's June 24th, 2002

18  letter directing that Americopters cease and desist its

19  operations both possessed the requisite finality.  Both

20  of these actions by the FAA denied the plaintiffs

21  rights that they previously enjoyed.

22        As proof of the definiteness of the FAA's

23  position on September 19, 2002, Regional Counsel Balton

24  issued a final response denying Mr. Ledger's repeated

25  requests for hearings.  The Ziegler e-mail and Kanae

1   letter had a direct and immediate effect on the day to

2   day operations of plaintiffs' business. In fact, upon

3   receiving the Ziegler e-mail, Guam Airport Authority

4   immediately complied with its terms by grounding the

5   Caribou and denying the aircraft and its crew access to

6   the taxiway and runway. Additionally, Americopters

7   shut down its operations from Chuck's Steak House and

8   conducted its flight operations from another location

9   on Guam. Clearly, the FAA's actions are final orders

10   within the meaning of Section 46110(a).

11       Accordingly, jurisdiction in this case is

12   proper with the Ninth Circuit Court of Appeals. And as

13   to the paucity of the record in this case, this record

14   is sufficient to permit the Ninth Circuit to evaluate

15   the Plaintiff's claims. Reference <u>Southern California</u>

16   <u>Aerial Advertisers Association</u>, 881 F.2d at 676.

17       As far as the constitutional challenge,

18   plaintiff contends that they're challenging the

19   constitutionality of the FAA act, the court rules that

20   while that may be so, it's still so inextricably

21   intertwined with the procedures and other merits -- so

22   inescapably intertwined with FAA procedures and merits

23   surrounding the FAA's orders. And so the subject

24   matter jurisdiction is properly vested exclusively in

25   the Ninth Circuit Court of Appeals as mandated by

1   Section 46110(a). Therefore, the motion to dismiss is

2   granted.

3            I would like to say that I would love to hear

4   this case. I think that government agencies need to

5   take a stance on what it is that they're supposed to be

6   doing. And this placement of people in a state of

7   limbo, whether inadvertent or purposeful, is something

8   that really does a disservice to all government

9   agencies who really have a genuinely, a genuinely

10  meritorious oversight function and regulatory function.

11  So, however, the court's hands are tied on this one,

12  the precedent is compelling that it is the Ninth

13  Circuit. And the court's ruling that these orders are

14  indeed final orders, or these letters are final orders,

15  compels the conclusions that the court has drawn.

16           I will follow up with a more comprehensive

17  written order that expands on the rationale, but I

18  don't like to keep you people hanging. But this is a

19  very interesting case, compelling reasons. I thought I

20  was going to sleep last night but it kept me awake

21  longer that I had intended. And my compliments to both

22  sides. But I do hope that this matter is pursued

23  vigorously, because this is a kind of an issue as a

24  practical matter we out here in the middle of the

25  Western Pacific, we really need to get finalized

1  because of the scarcity of facilities here, and

2  alternate facilities, and this will be a very important

3  issue.

4            Thank you very much to both sides.

5            MR. LEDGER:  Your Honor, I would just like to

6  bring one issue to the court's attention, and that is,

7  although I haven't looked in great detail at perhaps

8  some time deadlines that we would be required to meet

9  with respect to agency administrative actions and

10  filing in the Ninth Circuit, and what I'm asking the

11  court to clarify is that as of today the court has

12  deemed the Kanae correspondence and the Ziegler

13  correspondence to be --

14            THE COURT:  Final orders.

15            MR. LEDGER:  -- final orders that have been

16  fully adjudicated by the administrative process and now

17  ripe for review by the Ninth Circuit.

18            THE COURT:  Yes.  Well, I've made the ruling,

19  but it's not official until we have entered the order.

20  That's my understanding.

21            MR. LEDGER:  That's fine, Your Honor.  We'll

22  wait.

23            THE COURT:  But I will be coming out with the

24  order fairly quick, you can rest assured, by next week,

25  one week at the latest, hopefully sooner.  I do want to

1  see this issue get up to the Ninth Circuit fairly

2  quickly because I think it's an important issue.  In

3  looking at, reading the case law, it's something that

4  needs to be clarified further, and hopefully the

5  availability of the administrative procedures will be

6  both clarified and made much more pertinent.

7          MR. LEDGER:  We've heard what the court has to

8  say this morning and the efforts of the court are not

9  being wasted because the issue will be taken out once

10 the written decision comes out.

11         THE COURT:  I believe I have voiced some

12 strong concerns on this.  I'm not angry at anybody, I

13 get kind of excited when I'm grappling with an issue

14 that I think is so intriguing, and I think this is one

15 of those issues that deserves both.  And I do wish both

16 sides the very best.

17         MR. LEDGER:  Thank you.

18         THE COURT:  Thank you very much.

19         MR. CAPLAN:  Thank you, Your Honor.

20         (Proceedings concluded at 11:03 a.m.)

21                      *  *  *

22

23

24

25

Wanda M. Miles
Official Court Reporter
District Court of Guam

# CERTIFICATE OF REPORTER

CITY OF AGANA          )
                       ) ss.
TERRITORY OF GUAM      )


        I, Wanda M. Miles, Official Court Reporter

of the District Court of Guam, do hereby certify the

foregoing pages 1-24, inclusive, to be a true and

correct transcript of the shorthand notes taken by me

of the within-entitled proceedings, at the date and

time therein set forth.

        Dated this 20th day of August, 2003.


        *Wanda M. Miles*


Wanda M. Miles
Official Court Reporter
District Court of Guam