CARLSMITH BALL LLP

DAVID LEDGER
ELYZE McDONALD
Bank of Hawaii Bldg., Suite 401
134 West Soledad Avenue, P.O. Box BF
Hagåtña, Guam 96932-5027
Tel No. 671.472.6813

Attorneys for Plaintiff
Jan's Helicopter Service, Inc.

FILED
DISTRICT COURT OF GUAM
FEB 22 2007
MARY L.M. MORAN
CLERK OF COURT

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| JAN'S HELICOPTER SERVICE, INC., Plaintiff, vs. FEDERAL AVIATION ADMINISTRATION, Defendant. | CIVIL CASE NO. CV03-00002 **FIRST AMENDED COMPLAINT** |

On remand from the Ninth Circuit Court of Appeals, 441 F.3d 726 (9th. Cir. 2006), Plaintiff alleges the following:

1. The Court has original and exclusive jurisdiction of this action pursuant to 28 U.S.C. § 1331, there being federal and constitutional law questions for this Court to resolve.

2. Jan's Helicopter Service, Inc. ("Jan's") is a corporation organized and existing according to law.

3. The Federal Aviation Administration is an agency of the United States government, that pursuant to the Federal Aviation Act of 1958, as amended, regulates aircraft.

4. Venue is proper pursuant to 28 USC §1391(b)(2), as a substantial part of the events on which the claims in this Complaint are based occurred in the Territory of Guam.

5. Jan's is the legal and registered owner of a deHavilland Caribou DCH-4A ("the Caribou"), call sign RPC 2702.

6. Jan's has operated the Caribou under 14 C.F.R. Part 375 – Navigation of Foreign Civil Aircraft within the United States - and specifically § 375.30 – Operations Other than Commercial Air Operations – since March 7, 2000, when the United States Department of Transportation advised that no additional DOT operating authority would be required. See **Exhibit A.** Such authority was conditional upon, among other things, unity of ownership between the Caribou and any cargo carried, and that once delivered, the cargo would not be used in the furtherance of Jan's business. Jan's met these conditions.

7. On one occasion, Jan's used the Caribou to transport a helicopter, also owned by Jan's, to another location in Micronesia.

8. Once delivered, the transported helicopter was not used in "the furtherance of Jan's business," under 14 C.F.R. 375.1 (definition of commercial air operations).

9. Mr. Lewis I. Ziegler is an agent of the Federal Aviation Administration and at all times pertinent, acted within the scope of his employment with the FAA.

10. On July 31, 2002 Mr. Ziegler, without prior notice or allowing Jans an opportunity to be heard in any manner, issued a directive to the Guam International Airport Authorities (GIAA) contending that Jan's Caribou was not "authorized to operate [on Guam]." In doing so Mr. Zeigler effectively grounded the aircraft; in particular, caused the Guam Airport authorities to subsequently ground the Caribou and deny the aircraft and its crew access to the taxiway and runway for legal non-cargo flights. See **Exhibit B**.

11. Mr. Ziegler kept his directive secret from Jans even after he issued it to the GIAA. As a result, it was not until August 9, 2002, as the Caribou was preparing to taxi for a simple

maintenance flight, that the GIAA grounded the Caribou. By not informing Jans of its actions, or providing Jans with notice prior to issuance of the directive grounding the aircraft, the FAA, through its employee Mr. Ziegler, acted in an arbitrary and capricious manner and otherwise unlawfully.

12. Understandably baffled, Jans asked the GIAA to explain why the aircraft was grounded. GIAA's response was that the FAA had revoked the Caribou's operating authority and, as proof, faxed Exh. B - Mr. Ziegler's July 31st email - to Jan's.

13. The response of the GIAA as described above is an endorsement that Mr. Ziegler was acting within the scope of his employment at all times pertinent. In fact, subsequently on November 22, 2002, the FAA confirmed in writing that Mr. Zeigler was acting within the scope of his employment.

14. Mr. Ziegler's actions, as an employee of the FAA, constituted an unlawful taking by the FAA of Jan's property without due process of law. In particular, Jans was unable to conduct flight operations. This caused Jans to lose money, business goodwill, future business, and to incur substantial expenses as a result of having to move the aircraft and conduct its flights from another location off of Guam.

15. As a result of the events described above Jans requested administrative review and relief and any form of opportunity to be heard.

16. The FAA denied Jans any opportunity to be heard and endorsed Mr. Ziegler's actions.

17. On November 22, 2002, Jan's received the FAA's written confirmation that Mr. Ziegler had acted within the scope of his employment

## COUNT I: VIOLATION OF DUE PROCESS UNDER AMENDMENT V

18. Paragraphs 1 through 17 are incorporated herein by reference.

19. The actions of the FAA, through Mr. Zeigler as an employee of the FAA acting within the scope of his employment, constitute violations of due process under Amendment V to the United States Constitution and therefore, an illegal taking of Jans property.

WHEREFORE Plaintiff requests the following relief:

1. Judgment in favor of Jan's and against the Federal Aviation Administration.

2. Actual and consequential damages according to proof.

3. Attorney's fees and costs.

4. Such other and further relief as the Court deems proper.

DATED: Hagåtña, Guam, February 22, 2007.

CARLSMITH BALL LLP

DAVID LEDGER
ELYZE J. MCDONALD
Attorneys for Plaintiff
Jan's Helicopter Service, Inc.

# EXHIBIT

# "A"

(1)

----- Original Message -----
From: Wellington, George <George.Wellington@ost.dot.gov>
To: J. Walker (E-mail) <jwalker@kuentos.guam.net>
Sent: Tuesday, March 07, 2000 11:59 AM
Subject: Part 375/USDOT

> David--
> Sorry for the delay in responding, but we've now worked your
> questions through our legal people, and here are the answers:
>
> Scenario #1: With the company owning, operating, and crewing the
> Caribou itself, the operation would be authorized by regulation under
> section 375.30, and no additional DOT operating authority would be
required.
>
> Scenario #2: With a subsidiary involved, and thus direct or indirect
> compensation, the operation would require either a foreign aircraft permit
> under section 375.42, or an exemption under 49 U.S.C. 40109. Operations
> authorized by permit under Part 375 are strictly limited to six flights
per
> calendar year, and any operations in excess of that number could be done
> only if the operator received exemption authority under 40109 (FYI, 40109
is
> common carrier authority, of the type held, for example, by British
Airways
> or Air Canada). In either case, we could not act on the request until the
> Federal Aviation Administration had reviewed the operator and given us
> written clearance, and that could prove to be a time-consuming process,
> given the distances involved. So, from a timing/ease of operation point
of
> view, scenario #1 would present far fewer problems.
>
> Whether operating under Scenario #1 or #2, the operator would need
> to comply with applicable FAA requirements, including those in 14 CFR Part
> 91.
>
> I hope this helps. If you have any further questions, let me know.
> George

**EXHIBIT A**

# EXHIBIT

# "B"

② dansn@gu

Move to: Sent

ATT MIKE

Message 21 of 28 (

**To:** gerardb@guamcell.net, dansn@guamcell.net

**From:** Lewis.I.Zeigler@faa.gov

**Date:** 31 Jul 2002, 04:09:11 AM

**Subject:**

Mr. Bautista and Mr. San Nicolas;

What can you tell me about a Philippine registered Caribou (DHC-4) tha supposed to be based on Guam and flying around the islands? Supposedly used to be a U.S. registered aircraft and is hauling some small helico that are used on fishing boats. Whoever it is they aren't authorized t operate there.

Best regards,

Lew Zeigler

Message 21 of 28 (N

Move to: Sent

EXHIBIT B