LEONARDO M. RAPADAS
United States Attorney
MIKEL W. SCHWAB
Assistant U.S. Attorney
Sirena Plaza, Suite 500
108 Hernan Cortez Avenue
Hagatna, Guam 96910
Tel : (671) 472-7332
Fax : (671) 472-7215

Attorneys for the United States of America

**FILED**

DISTRICT COURT OF GUAM

MAR 1 3 2007 ₦ᵇ⁰

MARY L.M. MORAN
CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| JAN'S HELICOPTER SERVICE, INC.,<br><br>        Plaintiff,<br><br>vs.<br><br>FEDERAL AVIATION<br>ADMINISTRATION,<br><br>        Defendant. | CIVIL CASE NO. 03-00002<br><br>**AMENDED MOTION TO DISMISS<br>FOR FAILURE TO STATE A CLAIM<br>OR, IN THE ALTERNATIVE, TO<br>TRANSFER** |

The United States respectfully moves for the dismissal of the above entitled case because the Plaintiff fails to state a claim upon which relief may be granted. In the alternative, Defendant requests that this Court transfer this action to the Court of Federal Claims.

### STATEMENT OF THE CASE

I.    Nature Of The Case

Plaintiff, Jan's Helicopter Service, Inc. ("Jan's") filed a complaint in this Court alleging that the Federal Aviation Administration ("FAA") had violated 14 C.F.R. §§ 13.5 and 13.20(b) and had committed a regulatory taking of its property in violation of the Fifth Amendment to the Constitution. After Defendant filed a Motion to Dismiss, this Court dismissed the complaint by Memorandum Order dated December 29, 2003, because the Court lacked jurisdiction.

ORIGINAL

1    Jan's appealed to the Ninth Circuit. The Court of Appeals affirmed in part, but reversed

2    the dismissal of the takings claim and remanded to this Court. Americopters, LLC v. FAA, 441

3    F.3d 726, 738 (9th Cir. 2006). The court of appeals ruled that Jan's takings claims were not

4    inescapably intertwined with an administrative challenge to an FAA order because there was no

5    pending FAA order and no previous agency determination on the merits. Id. Jan's subsequently

6    filed its First Amended Complaint and the United States has answered the Complaint. Plaintiff's

7    disclosures allege a takings claim in excess of $10,000 (Exhibit 1).

8

9    II.    Statement Of Facts

10   The following facts are taken from Jan's complaint. We presume them to be true for

11   purposes of this motion only.

12   Jan's owns a de Havilland Caribou DCH-4A ("Caribou") transport plane. Complaint

13   ("Co.") at ¶5, Exhibit ("Ex.") C, p. 1. The Caribou is used to transport helicopters, also owned

14   by Jan's, that are rented or leased by various commercial fishery operators in Micronesia to

15   search for tuna. Co. at Ex. C, p. 1. Sometime in 2000, Jan's asked the U.S. Department of

16   Transportation ("DOT") what authorization it needed to fly the foreign-registered Caribou out of

17   the Guam Airport. Co. at Ex. A. The DOT replied that if Jan's owned, operated and crewed the

18   Caribou itself "the operation would be authorized by regulation under [14 C.F.R. § ] 375.30, and

19   no additional DOT operating authority would be required." Id. Jan's took this statement to

20   mean that it could fly the Caribou out of Guam Airport without any advance DOT or FAA

21   authorization "so long as there was a unity of ownership between the Caribou and the helicopter

22   being transported." Co. at Ex. C, p. 1.

23   On July 31, 2002, Lewis Zeigler, regional FAA Aviation Safety Inspector, sent an

24   electronic mail message ("e-mail") to the Guam Airport:

25   What can you tell me about a Philippine registered Caribou (DHC-4) that is
     supposed to be based on Guam and flying around the islands? Supposedly it used
26   to be a U.S. registered aircraft and is hauling some small helicopters that are used
     on fishing boats. Whoever it is they aren't authorized to operate there.

27
     Co. at ¶ 10, Ex. B.
28

2

1   Less than two weeks later, as Jan's Caribou was preparing to taxi for take off, the Guam Airport
2   denied ramp access, effectively grounding the aircraft. Co. at Ex. C, p. 2.

3        Jan's complaint alleges that Mr. Ziegler acted without authority, legal cause, other
4   justification or prior notice, and that he acted outside the scope of his employment. Co. at ¶ 10.
5   The Court of Appeals and the FAA agree that Mr. Ziegler did not have the authority to issue
6   orders upon behalf of the FAA. Americopters, 441 F.2d at 737.

7        The Plaintiff's Amended Complaint now claims a constitutional taking by the FAA. Co.
8   at ¶ 18.

9

10                                      ARGUMENT

11  I.    Standard Of Review

12       A complaint may be dismissed for failure to state a claim pursuant to Federal Rule of
13  Civil Procedure 12(b)(6) if it "appears beyond doubt that the non-movant can prove no set of
14  facts to support its claims." Simpson v. AOL Time Warner Inc., 452 F.3d 1040, 1046 (9th
15  Cir.2006). Alternatively, dismissal can be based upon the lack of a cognizable legal theory.
16  SmileCare Dental Group v. Delta Dental Plan of Cal., Inc., 88 F3d 780, 783 (9th Cir.1996). In
17  evaluating such a motion "[a]ll allegations and reasonable inferences are taken as true, and the
18  allegations are construed in the light most favorable to the non-moving party, but conclusory
19  allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss."
20  Simpson, 452 F.3d at 1046.

21

22  II.   The United States Is Not Liable For The Unauthorized Actions Of Its Employees

23       The Little Tucker Act, 28 U.S.C. § 1346(a)(2), confers jurisdiction upon a district court to
24  consider takings claims against the Government that do not exceed $10,000. When district court
25  jurisdiction is based upon the Little Tucker Act, final decisions of the court are appealed to the
26  United States Court of Appeals for the Federal Circuit. 28 U.S.C. § 1295(a)(2).

27       "A 'taking' occurs when the Government exercises its proper contract, property or
28  regulatory power to control property or rights which it does not acquire through purchase."

                                          3

1   Torres v. United States, 15 Cl. Ct. 212, 215 (1988). The Government may not take private
2   property for public use without providing just compensation. First English Evangelical Lutheran
3   Church of Glendale v. County of Los Angeles, 482 U.S. 304, 314-15 (1987).

4           Under some circumstances, regulatory action infringing upon private property without
5   providing just compensation is invalidated on the basis that it "goes too far." Hodel v. Irving,
6   481 U.S. 704, 718 (1987). However, the "Government hardly could go on if to some extent
7   values incident to property could not be diminished without paying for every such change in the
8   general law." Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 413 (1922). "The general rule at
9   least is, that while property may be regulated to a certain extent, if regulation goes too far it will
10  be recognized as a taking." Id. at 415. The "Fifth Amendment's guarantee . . . [is] designed to
11  bar Government from forcing some people alone to bear public burdens which, in all fairness and
12  justice, should be borne by the public as a whole." Armstrong v. United States, 364 U.S. 40, 49
13  (1960).

14          A threshold issue in a takings case is whether the taking is based upon authorized
15  Government conduct. Regional Rail Reorganization Act Cases, 419 U.S. 102, 126-27 n.16
16  (1974); Robert A. Hooe v. United States, 218 U.S. 322 (1910); Short v. United States, 50 F.3d
17  994, 1000 (Fed. Cir. 1995). The plaintiff bears the burden of proving authority as an element of a
18  cause of action for just compensation. Coast Indian Community v. United States, 550 F.2d 639,
19  649 (Ct. Cl. 1977).[1] The act at issue must be "authorized, expressly or by necessary implication, .
20  . . by some act of Congress," in order for the Government to be liable for a taking. Regional Rail
21  Reorganization Act Cases, 419 U.S. at 127 n.16 (quoting Hooe, 218 U.S. at 336).

22          Here, both the Circuit Court and the FAA agree that Mr. Zeigler's actions were not
23  authorized. Americopters, 441 F.2d at 737. Th fact that the actions were unauthorized is fatal to
24  Jan's case. Because the actions were unauthorized, Jan's complaint fails to state a claim upon
25  which relief may be granted. E.g., Regional Rail Reorganization Act Cases, 419 U.S. at 127

26  _____

27          [1] The Court of Claims is the predecessor court to the Federal Circuit. In South Corp. v. United States, 690
    F.2d 1368, 1370 (Fed. Cir.1982), the Federal Circuit adopted the precedent of the Court of Claims.
28

4

n.16. Accordingly, the Court should dismiss the complaint.

III.     In The Alternative, This Court Should Transfer This Action To The Court Of Federal Claims Because Its Claimed Damages Are Greater Than $10,000

The Federal transfer statute provides in relevant part:

Whenever a civil action is filed in a court ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed ....

28 U.S.C. § 1631.

The determination as to whether a district court or the Court of Federal Claims possesses jurisdiction to consider a takings claim depends upon the amount in controversy. As we stated above, this Court may consider a takings claim if the plaintiff seeks no more than $10,000 in damages. 28 U.S.C. § 1346(a)(2). If the plaintiff seeks more than $10,000, the Court of Federal Claims possesses exclusive jurisdiction to consider the action. Eastern Enterprises v. Apfel, 524 U.S. 498, 520 (1998). The Plaintiff in this action is claiming damages in excess of $10,000.

## CONCLUSION

Plaintiff claims a constitutional taking by the agency based on alleged actions by an FAA employee. That employee was without authority. For a taking to occur by matter of an act of a government employee that act must be accomplished within the scope of his statutory or delegated authority. "Absent such a showing, there can only be a tortious trespass, for which the Fifth Amendment does not require compensation by the sovereign." Coast Indian Community v. United States, 213 Ct. Cl. 129, 550 F. 2d 639 (1977). In this instance, Plaintiff has no set of facts which could support a Fifth Amendment taking claim against the sovereign. Therefore, the Complaint should be dismissed.

In the alternative, Plaintiff's constitutional taking claim against the United States in excess of $10,000 places jurisdiction exclusively in the U.S. Court of Claims and the case must

5

1   be transferred to that Court.

2

3   Respectfully submitted this 13 day of March 2007.

4

5                                           LEONARDO M. RAPADAS
                                            United States Attorney
6                                           District of Guam and CNMI

7

8                                    By:
                                            MIKEL W. SCHWAB
                                            Assistant U.S. Attorney
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6

CARLSMITH BALL LLP

DAVID LEDGER
ELYZE J. MCDONALD
Bank of Hawaii Bldg., Suite 401
134 West Soledad Avenue, P.O. Box BF
Hagåtña, Guam 96932-5027
Tel No. 671.472.6813

Attorneys for Plaintiff
Jan's Helicopters Service, Inc.

**US Attorney's Off...**
**Districts of Guam & N...**

**NOV 22 2006**

Time _____
Receiving name _____
Date keyed in Dbase _____
Entered into Dbase by: _____

Rec'd in USAO
Civil Division
Nov 29, 2006

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| JAN'S HELICOPTER SERVICE, INC., | CIVIL CASE NO. CIV03-00002 |
| Plaintiff, | |
| vs. | **PLAINTIFF'S *SUPPLEMENTAL* INITIAL DISCLOSURES; DECLARATION OF SERVICE** |
| FEDERAL AVIATION ADMINISTRATION, | |
| Defendant. | |

Plaintiff Jan's Helicopters Service, Inc. hereby provides the following supplemental

initial disclosures pursuant to Federal Rules of Civil Procedure 26(a)(1).

A.   Persons with Discoverable Information:

[....]

B.   Documents:

[....]

Please see the attached documents.

C.   Damages:

[....]



4840-3751-3473.1.051998-00036

Please refer to the attached documents for losses Jan's sustained as a result of the action taken by the FAA.

DATED: Hagåtña, Guam, November _2 2_, 2006.

CARLSMITH BALL LLP

_____
DAVID LEDGER
ELYZE J. MCDONALD
Attorneys for Plaintiff
Jan's Helicopters Service, Inc.

## DECLARATION OF SERVICE

I, David Ledger, hereby declare under penalty of perjury of the laws of the United States, that on November _22_, 2006, I will cause to be served, via hand delivery, a true and correct copy of PLAINTIFF'S *SUPPLEMENTAL* INITIAL DISCLOSURES; DECLARATION OF SERVICE upon the following Counsels of record:

> Mikel W. Schwab
> Assist U.S. Attorney
> OFFICE OF THE UNITED STATES ATTORNEY
> DISTRICT OF GUAM AND CNMI
> 108 Hernan Cortez Avenue
> Hagåtña, Guam USA 96910
> **Attorneys for Plaintiff United States of America**

Executed this _22_ day of November 2006 at Hagåtña, Guam.

DAVID LEDGER

COULD HAVE BEEN ON CONTRACT HUGUST 5TH

WENT ON Dec 3RD

① # 30600.00 per MONTH

② HAD to MOVE Air to PHilipene
   To TRY AND FIND WORK.

③ loss of USE OF AiRcRAft foR otHER
   CoNtract)

④ IF I ONly HAD ONe AirpIane AND ONe
   Helicopter WOULD HAVE BEEN RUINED.

BEAN COUNTER
① HH ReNt
② INSURANCE cHARGe

# Yuh Yow Fisheries Group & Companies

8 Yu-Kang North 1st Rd., Chen-Chien Dist., Kaohsiung, Taiwan

Tel / +886-7-822-0899    Fax / +886-7-811-5143

---

To: Hansen Helicopters, Inc. ( +1671-649-9582 )                    July 24, 2002

Attn: Mr. Jon D. Walker

C.C.: Mr. Marvin R. Reed

692734740985
Doug Belter

Dear Sirs, Good Days!

Regarding the helicopter for F/V Fu Chi Hsiung No.737. My captain asked me what time he could receive the helicopter. He heard that the F/V Far Caystal No.707 would not be move back to Taiwan now. It will be repaired for a couple of weeks at Ponape. Then, it will move to fishing soon. I think it should be some unceremonious, but I would like to know the schedule of helicopter for FCH737?

Best regards.



Eric Tsai, YYF

# Yuh Yow Fisheries Group & Companies

8 Yu-Kang North 1ˢᵗ Rd., Chen-Chien Dist., Keohsiung, Taiwan

Tel / +886-7-822-0899     Fax / +886-7-811-5143

To:     Hansen Helicopters, Inc. (+1671-649-9582)          Aug 5, 2002

Attn:   Mr. Jon D. Walker

Dear Jon,

I am sorry for not replying your Fax of August 1. Yesterday, I just finish a two weeks business trip from Singapore and Indonesia.

It is nice to receive your good news about the helicopter for FCH737. The captain is very concerning about what time he can get his helicopter. Due to this vessel will move inside Majuro tomorrow and stay there less 8 days, is it possible now to know the schedule of shipping and the ETA on Majuro?

Regarding you offer the new rate, I could understand your position. I do believe we had a hard time in passing three years, but please you can concern about that all of my vessels will use your four helicopters. It will spend about USD 120,000- per month. It sure is a lot of cost for my company in the future. I would like to appreciate you, if you can agree to keep the same rate.

Best regards.

Eric Tsai, Chief Manager of YYF

# Yuh Yow Fisheries Group & Companies

8 Yu-Kang North 1st Rd., Chen-Chien Dist., Kaohsiung, Taiwan

Tel / +886-7-822-0899      Fax / +886-7-811-5143

To:    Hansen Helicopters, Inc. (+1671-649-9582)                     Aug. 21, 2002

Attn:   Mr. Jon D. Walker

Dear Jon,

Regarding your fax of August 20. I don't think my captain will move his ship to near Ponape, due to his fishing area is still on Kiribati. He will use Majuro to be the transship port when he finish one fishing trip. I would like to say that maybe you should send the helicopter to Majuro by container.

I would like to know that has other charge I need to pay it except container fee, and when you will start to count the helicopter rate. Its start from when the helicopter Is onboard or the container is arrived at Majuro?

Best regards.

Eric Tsai,

Chief Manager of YYF

Hansen Helicopters Inc.
PO box 9099
Tamuning, Guam 96931
Telephone: 671-649-9580
Fax: 671-649-9582

# *Hansen Helicopters Inc.*

### Republic of the Philippines ATO approved repair station #257-F

August 23, 2002

To: Yuh Yow Fisheries Group
Attention: Eric Tsai
From: Jon Walker

Dear Eric

We have a container schedule for Majuro.

The container will depart out of Saipan for Majuro on September 16th and arrive on Majuro October 7th.

The price of the container is $2200.00
I will fly the helicopter to Saipan along with three mechanics to disassemble the aircraft and put it into a container.

The plane tickets and hotel stay in Saipan will be the only charges.
We will then have to go to Majuro and Assemble the helicopter and install the GPS tracking gear on the ship.

The charges will again only be the three plane tickets and the hotel stay in Majuro.

I regret that we cannot take the helicopter in our cargo plane as previously discussed. Due to events beyond our control, it is not possible at this time.

I realize this is not getting the helicopter onboard the ship as soon as the company desired but the container service is slow to Majuro.

Please advise ASAP of your decision.

Jon Walker
Operations Manager

00006

# Yuh Yow Fisheries Group & Companies

8 Yu-Kang North 1ˢᵗ Rd., Chen-Chien Dist., Kaohslung, Taiwan
Tel / +886-7-822-0599    Fax / +886-7-811-5143

To:    Hansen Helicopters, Inc. (+1671-649-9582)                    Aug. 26, 2002

Attn:    Mr. Jon D. Walker

Dear Jon,

Regarding your fax of today. I know you will start the lease payments from September 10th when the helicopter is leaving for Saipan. Due to my captain could not receive his helicopter before the 10th of September, I am not sure that my company will agree to pay the lease payment from this day. It supposes I can understand that you will start on this day. Would you please consider that even if the container will arrive at Majuro on the 6th of October, it isn't sure my vessel could be there. It is possible that the vessel be there in after weeks or months when it is full of catching. Therefore, please you can consider my company accept to pay your fairly charge about traffic fee and hotel fee, and also you don't need to send the pilot and the mechanic to Majuro before the 10th of October. It should be some unreasonable, may I suggest that you would kindly approve to start from October?

It's correct that FK606 will return the helicopter to Guam, but I can't confirm when.

Best regards.

Eric Tsai,

Hansen Helicopters Inc.
PO box 9099
Tamuning, Guam 96931
Telephone: 671-649-9580
Fax: 671-649-9582

# *Hansen Helicopters Inc.*

### Republic of the Philippines ATO approved repair station #257-F

September 30, 2002

To: Yuh Yow Fisheries
Attention: Eric Tsai
From: Jon Walker

Dear Eric

The helicopter will arrive in Majuro on the 8th of October.

Do you have a date the ship will be in port to receive the helicopter?

Bets Regards

Jon Walker
Operations Manager

10/3/02

REFAY ...
PLS. ADVISE .
THANK YM .

# Yuh Yow Fisheries Group & Companies

8 Yu-Kang North 1ˢᵗ Rd., Chen-Chien Dist., Kaohsiung, Taiwan

Tel / +886-7-822-0899     Fax / +886-7-811-5143

To:    Hansen Helicopters, Inc. (+1671-649-9582)          Oct. 03, 2002

Attn:  Mr. Jon D. Walker

Dear Jon,

Regarding your fax of today. I am sorry for replying is so late. I am just returned my office yesterday. I already informed the captain of FCH737. He should arrange to move into Majuro for catching the helicopter near October 8, but it is not sure now. Anyway, I will let you know the real day when I get information from my boat.

I will go to Japan for 4 or 5 days.

Best regards.

Eric Tsai,

# HANSEN HELICOPTERS, INC.

### Republic of the Philippines Approved Repair Station # 257-F
### P O BOX 9099 TAMUNING, GUAM 96931
### (671) 649-9580/1 FAX: (671) 649-9582

October 17, 2002

To:      Yuh Yow Fishery Group
         Fax: (886-7) 811-5143

Attn.:   Mr. Eric Tsai

Re:      FCH 737 Update

From:    Jon Walker

**********************************************************************

Eric,

Please give us an update on the FCH 737 boat' arrival in Majuro. The helicopter is already in Majuro since last week.

Your soonest reply is greatly appreciated.

Regards,

Jon Walker

00010

# HANSEN HELICOPTERS, INC.

**Republic of the Philippines Approved Repair Station # 257-F**
**P O BOX 9099 TAMUNING, GUAM 96931**
**(671) 649-9580/1 FAX: (671) 649-9582**

October 21, 2002

**To:**     **Yuh Yow Fishery Group**
        **Fax: (886-7) 811-5143**

**Attn.:**   **Mr. Eric Tsai**

**Re:**     **FCH 737 Update**

**From:**   **Jon Walker**

**********************************************************************

Please give us an update on FCH 737 boat. . . . Need to know as soon as possible as the helicopter is waiting in Majuro.

Thank you and best regards.

00011

# Yuh Yow Fisheries Group & Companies

8 Yu-Kang North 1ˢᵗ Rd., Chen-Chien Dist., Kaohsiung, Taiwan

Tel / +886-7-822-0899     Fax / +886-7-811-5143

To:     Hansen Helicopters, Inc. (+1671-649-9582)                     Oct. 21, 2002

Attn:    Mr. Jon D. Walker

Dear Jon,

Good day and sorry again for replying is late. The ETA Majuro of FCH737 is unknowable now. Three days ago, FCH737 just finished transferring from Christmas Island. I discussed with captain, he said he had not any idea for the ETA due to the fish still on east side. I think it is hard to arrange anything for you and me. I only can do that is informing you the ETA before one week.

The FK606 need to back to Taiwan for repairing now. The ETA Guam supposes to be November 3. It will take almost 10 weeks for repairing in Kaohsiung.

Best regards.

Eric Tsai,

# Helicopter Lease Service Agreement
## (FCH 737)

Lease of aircraft made effective <u>October 10, 2002</u> by and between Eddie Air, Inc. at Port Vila, Vanuatu, South Pacific referred to as "Lessor" and Yuh Yow Fishery Group whose address is 8, Yu Kang North 1st Road, Chen Chien District, Kaohsiung, Taiwan 806 R.O. C., referred to as "Lessee"

## Recitals

The parties recite and declare that:

A.  The Lessor is the registered owner of an aircraft described as follows:

| | |
|---|---|
| Helicopter Manufacturer | Hughes |
| Model Number | 500C |
| Serial Number | 740620S |
| Registration Number | N190M |

The above, referred to as the "Aircraft" is available for delivery to a qualified Lessee.

B.  Lessee desires to lease the aircraft inclusive of a Pilot and/or Mechanic "aircrew" and required maintenance under such terms and conditions as are mutually satisfactory to Lessor and Lessee.

C.  The Lessor and Lessee agree to the following:

## Section One, Lease of Aircraft

In consideration of the rent to be charged as set forth herein, Lessor agrees to Lease to the Lessee the aircraft together with the accessories and equipment listed in Schedule A, attached hereto. The aircraft shall be placed aboard the Lessee's vessel at a location designated by the Lessor at which time the Lessee shall be entitled to inspect the aircraft to the extent deemed necessary. Lessee shall have twenty-four hours from arrival of aircraft in which to provide Lessor with written notification of any defects in the aircraft or its equipment and accessories. In the absence of written notification, Lessee agrees it is satisfied with and finds the aircraft and its equipment and accessories to be acceptable.

## Section Two, Term of Lease

This lease shall commence and delivery of the aircraft will occur when the aircraft arrives in international waters. Unless terminated sooner under specific provisions provided for herein, this lease shall be for a period of twenty-four months from occurrence of delivery of the aircraft. This lease will automatically renew at the end of each twenty four month period unless either Lessor or Lessee gives a written notice of intention not to renew at least thirty days prior to the expiration of the twenty four month lease term then in effect.

## Section Three, Rent & Other Charges & Credits

Lease rent shall be payable monthly in advance beginning on the occurrence of delivery of the aircraft for this lease in the amount of Thirty Thousand Six Hundred Dollars in United States currency (U.S. $30,600.00) per month. Rent may be paid by wire transfer to Lessor's bank account as instructions, therefore, may from time to time be provided.

Beginning with delivery of the aircraft, Lessor agrees to provide up to 700 hours of flight time per twelve-month period of the lease. Flight time hours are agreed to include necessary engine startup procedures and routine maintenance and flight test requirements. Hours flown in excess of 700 "excess flight hours" will be billed annually at the rate of $400.00. In the event that less than 700 flight hours are accumulated during the annual period described, there will be no credit for unused hours. Lessee may designate his representative to monitor Hobbs (engine clock) meter readings, used to track flight hours, which are transmitted weekly, along with other data, to Lessor. Lessee agrees that Hobbs meter readings are acceptable for determination of excess flight hours.

Should the aircraft become inoperable or otherwise not airworthy, as deemed by the aircraft mechanic, due to mechanical or any other failure for a period exceeding a five day repair grace period, Lessee shall be entitled to a "down-time" rent credit. The grace period shall begin at the time the mechanic notifies the Lessor that the aircraft can not safely be used to conduct flight operations. The downtime credit is to be computed at the rental rate of $781.90 per day beginning on the first day after the five-day grace period. Downtime credit will cease to accumulate on the day the aircraft becomes airworthy or in the event that aircraft is not returned to Lessor within thirty days

It is further agreed that excess flight hours and downtime days will be computed on an annual basis beginning on the date of aircraft delivery. To the extent that downtime days exceed the amount of billable excess flight hours and, upon receipt of Lessee's instructions, Lessor will issue a cash refund or credit to the Lessee at the downtime credit rate. To the extent that excess flight hours exceed down-time hours, Lessor will issue an invoice to Lessee at the excess flight hour rate which shall be payable ten days from date thereof. In the event there are no excess flight hours for offset against downtime credits accumulated, downtime credit shall be paid to the extent of 700 allowable flight hours. Down time credits will not be paid in excess of 700 hours.

In the event that Lessee's vessel should be required to undergo scheduled or emergency dry-dock or in-port maintenance and repair procedures "shipyard time" at any shipyard or other port facility during the term of this agreement and upon ten days written notice to Lessor of Lessee's intention to return the aircraft to shore facilities designated by Lessor, Lessee shall be entitled to a period of sixty days shipyard time. Provided the aircraft has been returned to Lessor as herein prescribed, monthly rental charges will not accrue during the sixty-day shipyard time allowance period.

## Section Four, Indemnification & Insurance

Lessee agrees to indemnify Lessor against all losses, including costs and expenses, by reason of claims for injury to or death of persons and loss or damage to property arising from or in any manner connected with negligent possession, use, or operation of the aircraft by Lessee or its agents during the term of this lease.

Lessor shall maintain in full force and effect, sufficient insurance to cover loss of or damage to the aircraft resulting from flight operations or maintenance procedures performed by members of the aircrew. It is agreed that the cost of repairs and parts arising from damage to the aircraft which was caused by negligence or any action of members of the crew of Lessee's vessel will be reimbursed to the Lessor upon determination of the value, thereof.

Lessor agrees to maintain in full force and effect, sufficient insurance to cover losses, including attorney's fees and other expenses, arising from injury, workman's compensation claims or death of aircrew members retained in their professional capacities by Lessor. Lessee agrees to maintain in full force and effect, sufficient insurance to cover losses, including attorney's fees and other expenses, arising from injury or death, resulting from flight operations, of crew members of Lessee's vessel.

The vessel, vessel's owner, its employees and service agents should not be held liable/responsible to the Pilot and/or Mechanic being employed by Hansen Helicopters for any accident and/or incident occurred which is beyond the control of its vessel, master, services agents and crews.

## Section Five, Aircrew

At the sole discretion of the Lessor, Lessor shall provide a fully qualified and licensed Pilot, Mechanic, or Pilot/Mechanic for flight operations and maintenance of the aircraft. Compensation for professional flying and maintenance services shall be borne by the Lessor.

Lessee shall provide a provide a private room and meals for each pilot and mechanic which will meet standards equal to or exceeding those provided to the ships officers.

## Section Six, Repairs & Maintenance

Lessor shall maintain and repair the aircraft so that at all times it is in a safe and airworthy condition for the conduct of flight and fish spotting operations. Lessor shall pay all costs for replacement of parts and accessories arising from normal use in flight operations. Lessor shall be entitled to all salvage from used, worn, or broken parts recovered from aircraft.

While aboard the fishing vessel, flight plans and objectives will be at the discretion and direction of the Captain of the vessel or his designee. With respect to flight safety, weather conditions and the actual aviation and maintenance of the aircraft, all judgement and authority shall reside with the Pilot and/or Mechanic of the aircraft.

## Section Seven, Other Lessee Obligations

The Lessee shall provide proper aviation fuel, Jet A-1, delivered to the flight deck or day storage tank on the flight deck through a clean delivery system. Compressed air and fresh water necessary for post flight washing and maintenance will also be provided on the flight deck by the Lessee.

## Section Eight, Title

The registration and title to the aircraft shall be in the name of the Lessor and the aircraft at all times during the term of this agreement or automatic renewals shall bear internationally recognized registration markings. All responsibility and obligations in regard to the operation of the aircraft shall be borne by the Lessor.

## Section Nine, Notification of Accident

Lessee shall immediately notify Lessor of any accident or injury involving the aircraft or aircrew. Such notification shall include the time, location, and nature of the accident or damage. Lessee shall also provide the names and addresses of all parties involved or witness to the accident or injury as well as the names and addresses of owners of any properties sustaining damage.

Lessee shall advise Lessor of all correspondence, papers, notice, and documents whatsoever received by Lessee in connection with any claim or demand involving or related to the aircraft or its operation. Lessee shall aid and assist Lessor in the recovery of any damage claims from third parties liable therefore.

## Section Ten, Return of Aircraft

Upon expiry and after proper notification of termination under default provisions of this lease, Lessee shall return the aircraft to lessor at facilities accessible from shore as may be designated by Lessor.

## Section Eleven, Default

If Lessee fails to make any payments of rent or net excess of flight hours billed over down-time credit received within thirty days after such amounts are due and payable, or if Lessee fails to comply with any other provisions of this agreement, Lessor shall have the right to take possession of the aircraft wherever it may be located, without demand or notice and without any court order or other process of law and pursue any remedy available to Lessor at law or in equity. In the event of such default by the Lessee, Lessor at his option may terminate this agreement. Notwithstanding any repossession or other action that Lessor may take, Lessee shall be and remain liable for the full performance of all obligations, as well as any attorney's fees incurred by Lessor, to be performed under this lease. Lessor's waiver of any default on the part of Lessee shall not constitute a waiver of subsequent defaults.

## Section Twelve, Deposit

The last three months of the lease rent provided for in section three shall be deposited in advance upon delivery of the aircraft. This deposit will be retained as security for performance of the lease terms. Upon notification of intent not to renew, as herein provided, the deposit can be applied to the final three months of a contract which is not automatically renewed or may be refunded at the discretion of Lessor.

## Section Thirteen, Modification of Agreement

This agreement constitutes the entire understanding between parties, and any change or modification must be in writing and signed by both parties. This agreement is to be construed in accordance with the laws of jurisdictions where appropriate.

**In Witness Whereof,** Lessor and Lessee have executed this lease agreement on the day and year first above written.


Lessor, by its authorized representative


Lessee, by its authorized representative

Cable transfers are effected on the understanding that the bank shall not be liable for the consequences of any delay, omission or mistake in transmission or payment, in accordance with your instructions. We have ordered payment by cable today as below.

SWIFT ADDRESS: ICBCTWTP018.
DATE: 2002/11/11
FM: ICBCTWTPA010

中國國際商業銀行高雄加工出口區分行
電匯證實書
Confirmation of Cable Transfer

G TYPE : 100  PRIORITY  N
TO : CHASUS33      (JPMorgan Chase Bank        )
                   ((FORMERLY:MORGAN GUARANTY TRUST CO.)

8 User Ref 108
0   : AAAETS25004330
2 A : 20C21111USD61200,00
0 O : KIN SIN FISHERY CO.,LTD.
6 D : ANZBVUVX
7 D : ANZ BANK (VANUATU) LTD
9   : /010082 505845
      BEANBAG HELICOPTER SERVICES INC
1 A : BEII
2   /TELE/

下次匯款同收款人同銀行
請影印此張結匯證實書
貼在匯出匯款申請書上，
本行電腦立即作業。



INTERNATIONAL COMMERCIAL BANK OF CHINA
KEPZ BRANCH

第三聯　交匯款人存查　　　　AI　　VE　　DE　　　　　　　　　　興農悍

: HANSEN HELICOPTERS, INC.

u : Mr. Marvin                                    Nov. 18, 2002.

{is is confirmation of 2 months payment for FCH 737.

d\ the ETA Majuro of FCH 737 will be in the afternoon

? Nov. 24th. FCH 737 will plan to stay at Majuro about

to 10 days, in order to repair the generator.

:st regards.

ric Tsai, YYE



# Beanbag Helicopter Services, Inc.

Port Vila, Vanuatu, South Pacific

**Invoice No. 102-FCH.737**

## INVOICE ▬

**Customer**

| | |
|---|---|
| Name | Fu Chi Hsiang 737 |
| Address | Yuh Yow Fishery Group    Attn.:  Mr. Eric H. L.Tsai |
| | 8, Yu Kang North 1st Road, Chien Cheng District |
| City | Kaohsiung, Taiwan        State        ZIP |
| Phone | (886-7) 822-0899      Fax #: (886-7) 811-5143 |

| | |
|---|---|
| Date | 11/1/02 |
| Order No. | |
| Rep | |
| FOB | |

| Qty | Description | Unit Price | TOTAL |
|---|---|---|---|
| 1 | **Helicopter Service Agreement**<br>November 10 - December 9, 2002 | $30,600.00 | $30,600.00 |

| | |
|---|---|
| SubTotal | $30,600.00 |
| Shipping & Handling | |
| Taxes | |
| **TOTAL** | $30,600.00 |

**Payment Details**

- ○ Check
- ◉ Wire Transfer
- ○ Credit Card

Name _____
CC # _____
Expires _____

*Thank you for your business...*

**PAID**
11/16/02

# Jan's Helicopters, Inc.

## Republic of the Philippines ATO approved repair #257-F

November 11, 2006

To:
Attention:
From: Jon Walker

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

Caribou

1. Purchase price $190,000.00
2. Anchorage Alaska to Guam. 68 flight hours at 130 knots fuel burn is 100 GPH Average cost of fuel at the time was $4.00 per gallon. $27,200 in fuel. The engines use 1-2 gallons of oil per hour at $5.00 per gallon.
3. Ferry tanks were $8000.00 for two 450 gallon tanks. I installed and it took us 4 days to get the plane ready. Roger was also with me the entire time. $3000.00 per month salary. We took almost exactly a month to get rated and get the plane back to Guam.
4. It took 8 hours to get it to Cebu another 3 to Clark. 1200 gallons and fuel is now $6.00 per gallon $7200.00 $120.00 in oil. Landing fees are approximately $1200.00.
5. The Monthly charges are $300.00 for parking at Clark.
6. We had two engine changes during the time I have owned the plane. One for $20,000.00 and one for $26,000.00
7. Spent approximately $1000.00 on the day they denied access for fuel crew etc …